ROBISON *v.* WAYNE CIRCUIT JUDGES.

1. INFANTS — PROTECTION — JUVENILE COURTS — ESTABLISHMENT —
STATUTE—VALIDITY—APPORTIONMENT OF EXPENSE.
The Wayne county juvenile court act of 1907 (Local Act No.
684) is not invalid because the expense of maintaining the
court therein provided for is imposed in part upon the county
of Wayne and in part upon the city of Detroit, while the
jurisdiction of the court is limited to children of the city, be-
cause the care and protection of children is the subject of
police regulation and cannot be said to be the private con-
cern of one municipality rather than that of another.

2. STATUTES—PLURALITY OF SUBJECTS—JUVENILE COURT ACT. ·
The juvenile court act for Wayne county, Act No. 684, Local
Acts 1907, does not involve a plurality of objects because it
provides for the treatment and trial of minor children and
the punishment of offenses against children generally if with-
in certain ages, as the general purpose of the act, i. e., to con-
serve the interest of dependent, neglected and delinquent
children, is single.

3. CONSTITUTIONAL LAW—JURY—CRIMINAL PROSECUTIONS—RIGHTS
OF ACCUSED—JUVENILE COURT.·
The Wayne county juvenile court act of 1907 (Local Act No.
684), in so far as it attempts to provide for the trial of offenses
against children punishable as crimes by a jury of six, is un-
constitutional.

4. STATUTES—PARTIAL INVALIDITY—JUVENILE COURT LAW.
The invalidity of that provision of the Wayne county juvenile
court act of 1907 (Local Act No. 684) which attempts to pro-
vide for the trial of offenses against children by a jury of six
does not render the entire act invalid, since the beneficent
purposes of the statute may all be carried into effect if the
invalid provision be wholly eliminated.

5. CONSTITUTIONAL LAW — CLASS LEGISLATION — JUVENILE COURT
LAW — DISCRIMINATION IN FAVOR OF INMATES OF INSTITUTIONS.
The Wayne county juvenile court act of 1907 (Local Act No.
684) is not unconstitutional as class legislation because chil-
dren who are inmates of certain charitable and semi-charit-
able institutions, as to which the State exercises visitorial
powers, are excepted from its operation.

6. SAME—TRIAL BY JURY—RIGHT OF ACCUSED.

In so far as the statute authorizes the determination of the status of the child, and authorizes his commitment to the custody of a probation officer or keeper of an industrial school for the purpose of education and reformation, it is not invalid for providing that such action be taken upon the verdict of a jury of six, for such proceedings are in no sense criminal; but the further provision for placing the delinquent child on trial and imposing a fine not to exceed $25, with costs, etc., renders the proceeding criminal and renders the entire statute obnoxious to section 28 of article 6 of the Constitution providing for a jury of 12 in all courts of record.

Mandamus by James A. Robison, prosecuting attorney, to compel Joseph W. Donovan, Alfred J. Murphy, Morse Rohnert, George S. Hosmer, Henry A. Mandell, and Flavius L. Brooke, circuit judges of Wayne county, to designate one of their number to act as judge of the juvenile court of Detroit. Submitted November 19, 1907. (Calendar No. 22,544.) Writ denied March 5, 1908.

*Jasper C. Gates*, for relator.

*H. E. Spalding*, for respondent.

MONTGOMERY, J. This is an application for mandamus to require respondents to designate one of their number to act as judge of the juvenile court of Detroit, the respondents having refused such action for the reason that the juvenile court act of Detroit, so-called, being Act No. 684, Local Acts 1907, is unconstitutional, and the question for our determination is whether the act in question is constitutional.

The act is entitled:

"An act to regulate the treatment and control of dependent, neglected and delinquent children under the age of seventeen years within the city of Detroit; to establish the juvenile court of Detroit; to regulate the practice in such court; to provide for the appointment of probation officers; to prohibit the commitment to any jail, police station or house of correction of any child under the age of fourteen years, except in certain cases; to impose cer-

tain duties on county agents, and vest in said courts jurisdiction of offenses under statutes of this State relative to cruelty to children, truant and disorderly children and compulsory education and truancy."

The act, by section 1, is made to apply to children under the age of 17 years who shall be in the custody or control of any person who resides in the city of Detroit, and to any and all dependent, neglected, and delinquent children who shall be found within the city of Detroit, except such as shall be inmates of any State institution or industrial school for boys or girls, or some institution incorporated under the laws of this State.

The act then defines a " dependent " and " neglected " child at length, and includes in that category any child under the age of 17 years who is destitute, homeless, or abandoned; or dependent on the public for support; or who has not the proper parental care or guardianship; or who habitually begs or receives alms; or who is found living in any house of ill-fame or with any vicious or disreputable person; or whose home by reason of neglect, cruelty or depravity on the part of its parents, guardian, or any other person in whose care it may be, is an unfit place for such child; and any such child under the age of ten years who is found begging, peddling, or selling any article or singing or playing any musical instrument for gain upon the streets or giving any public entertainment, or who accompanies or is used in aid of any person so doing.

The words " delinquent child " are defined as any child under the age of 17 years who violates any law of this State or any city ordinance; or who is incorrigible; or who knowingly associates with thieves, vicious or immoral persons; or who, without just cause and without the consent of its parents or custodian, absents itself from its home or place of abode; or who is guilty of a large number of defined delinquencies.

The act then provides for a juvenile court, for the election of a judge thereof at the election in April, 1909, and

that the circuit judges of Wayne county shall designate one of their number to act as a judge of the juvenile court until the 1st of June, 1909, when the elective judge is required to enter upon his duties. It provides that the proceedings taken under the act shall not be deemed criminal proceedings. It provides for the jury commissioners drawing and returning the names of jurors, and for the summoning of not less than 18 nor more than 36 jurors at each term. It further provides that juries in said juvenile court shall be composed of six persons, who shall be residents of said city of Detroit, and shall severally possess the lawful qualification of jurors in the circuit court. The act also provides for the appointment of probation officers and for a matron.

It then provides that upon the filing in any juvenile court of any sworn complaint setting forth upon knowledge, information, or belief that any child is a delinquent, dependent, or neglected child within the meaning of the classifications contained in section 1 of the act, that the court shall give written notice to the county agent or probation officer, who shall proceed to inquire and examine into the parentage and surroundings of the child, and forthwith report the result of such inquiry to the court, and if upon such report it shall appear that the public interests or the interests of the child will be subserved thereby, a summons may issue requiring such child to appear before the court at the time and place therein named, and, in the court's discretion, requiring the person or persons having the custody or control of the child, to appear before the court and produce the child, and show cause why such child should not be adjudged a delinquent, dependent, or neglected child, as the case may be. In case of the failure of the child to appear a warrant may issue.

The act also provides that whenever a child is arrested, with or without warrant, he may be taken directly before the court, or if the child is taken before a justice of the peace or police magistrate, it shall be the duty of such

justice of the peace or police magistrate to transfer the same to the juvenile court, and the court may hear and dispose of the child in the same manner as if the child had been brought into court upon petition. The act then provides that upon the return of the warrant, or as soon as may be thereafter, the court shall proceed to hear and dispose of the case, and at such hearing the court shall examine the child and any witnesses that appear, and take such testimony relative to the case as may be produced or required, and provides that if the allegations against the child are proved the court may adjudge said child a delinquent, dependent, or neglected child, as the case may be. If it appear to the court that the welfare and interests of the child require it, he may be returned to his parents or guardians, and if the child is complained of as a delinquent and the court shall be of the opinion that his welfare and the interests of the public require that he be tried by criminal proceedings instead of being dealt with as a delinquent child, the court may, after hearing on said complaint, order that it be dismissed.

It is then provided, in section 14, that if the child be adjudged a delinquent child the court may place the case on trial and impose a fine not exceeding the sum of $25, with costs, or in the court's discretion and if the child be adjudged a dependent or neglected child the court may decree such child to be a ward of the court as far as its person is concerned. It also provides that at any time after the court shall have acquired jurisdiction of a child under this act, if in the opinion of the court such child be wilfully wayward and unmanageable, the court may cause him or her to be sent to the Industrial School for Boys at Lansing or to the Industrial Home for Girls at Adrian, or to any private home or institution approved of by the court, to receive such boy or girl subject to such conditions of sex and age as are provided for the reception of children in said school, home, or institution.

The act in terms provides that the disposition of the child under the provisions of the act, or any evidence given

in such case, shall not be used in any other court as evidence excepting in subsequent cases against such child under the same act or except at the instance of the child concerned. The act also provides that the court may inquire as to the ability of the parents to support the child, and that criminal proceedings shall not be begun against any child between the ages of 7 and 14 except for an offense punishable by death or imprisonment for life unless proceedings against the child as a delinquent have been instituted and previously heard.

The act also provides, in section 21, that for the purposes of this act said juvenile court is vested with full and complete jurisdiction under the laws relative to cruelty to children, truant and disorderly children and compulsory education and truancy, as more particularly embodied in the provisions of section 11507, 3 Comp. Laws, Act No. 222 of the Public Acts of 1889, as amended, and Acts Nos. 95 and 200 of the Public Acts of 1895, as amended, and with full and complete power and authority as magistrates and for proper proceedings to carry such laws into full effect.

The points urged against the constitutionality of this act are:

1. Under the act the control of delinquent children is effected through criminal proceedings, the issues involved in which are to be tried by a jury of six.

2. The offenses against children over which the court is given jurisdiction are either crimes or misdemeanors and are therefore not triable by a jury of six.

3. The exception from the operation of the act of certain classes of children is class legislation and a denial of equal protection of the laws.

4. The act involves two distinct objects, the treatment and control of certain classes of minor children and the punishment of offenses against children generally, if within certain ages, without regard to class.

5. While the juvenile court for which the act provides is limited in its jurisdiction over children to children of the city of Detroit, the expense of the establishment and maintenance of the court is imposed in part upon the city of Detroit and in part upon the county of Wayne.

We will consider these questions in a somewhat different order.

The objection that the law is unconstitutional in imposing certain of the expenses of maintaining this court upon the county of Wayne is not well taken. The care of juvenile delinquents might well be and often is committed to the county rather than the city authorities. Their care and trial is the subject of police regulation, and cannot be said to be of the private concern of one municipality rather than another. We think the cases cited by relator's brief are a sufficient answer to this contention. *People, ex rel. Schmittdiel,* v. *Wayne County Auditors,* 13 Mich. 233; *People, ex rel. Covell,* v. *Kent County Treasurer,* 36 Mich. 332; *People, ex rel. Knox,* v. *Wayne County Treasurer,* 40 Mich. 62.

The objection that the act involves two distinct objects, viz., the treatment and trial of minor children and the punishment of offenses against children generally, if within certain ages, is not sustained. The general purpose of this act is single. It is to conserve the interest of dependent, neglected, and delinquent children. As a means to the end the legislature sought to confer upon the juvenile court jurisdiction of certain offenses against children generally. Whether this provision be open to constitutional objection does not affect the question of whether it presents a distinct object, so as to make the title double. We think it has not that effect.

But it is claimed that section 21, in its attempt to confer upon the juvenile court jurisdiction of offenses committed against children, is unconstitutional, for the reason that by the very terms of the act in question a jury of the juvenile court is confined to a jury of six, while in section 11507, 3 Comp. Laws, for instance, a penalty is provided against parents or guardians offending which may be punished by imprisonment in the county jail, State's prison, or house of correction at Ionia for a maximum period of five years. It is too obvious to require discussion, that unless it can

151 MICH.—21.

be said that the general provisions of section 21 modify
the particular provisions of section 5 which confines the
jury to six persons, that, so far as section 21 is concerned,
there is an attempt to confer upon a jury of six a jurisdic-
tion to determine the guilt or innocence of a party charged
with crime in violation of section 28 of article 6 of the
Constitution.

It is urged by relator's counsel that the provisions of
section 5 for a jury of six persons should be held applica-
ble only to the ordinary proceedings of the court as out-
lined in sections 1 to 20 of the act, and that, for the pur-
pose of exercising its jurisdiction under the criminal stat-
utes mentioned in section 21, it should be held that the
juvenile court is clothed with full and complete power and
authority for proper proceedings under these criminal
statutes; and that if a jury of 12 persons is essential for
this purpose the juvenile court is possessed of full and
complete power and authority to impanel such jury and
carry such criminal statutes into full effect.    It is said that
it is in the teeth of the language of the section conferring
full and complete authority for proper proceedings to say
that the juvenile court has not the power to impanel a
constitutional jury to try the case.

We think this contention places too little stress upon
the plain words of the statute.    Had no number been
provided for in the statute the power to impanel a jury of
12 might possibly have implied, although it would be dif-
ficult to fit the machinery of the circuit or recorder's court
to the selection of the jury for the juvenile court.    But
such is not this statute.    The statute provides in terms
that juries in said juvenile court shall be composed of six
persons, and proceeds to define their qualifications.    It is
that tribunal, with a judge, to whom the attempt is
made to commit the powers conferred by the act in ques-
tion, and as a jury of six is not competent under our Con-
stitution to deal with a criminal charge in a court of rec-
ord, it follows that this provision of the act is unconstitu-
tional.    But we do not think it necessarily follows that

the entire act should fall. The beneficent purposes of the statute may all be carried into effect if this section be wholly eliminated, and the jurisdiction to punish offenders in the statute referred to in section 21 be left where the previous law has reposed it. The main purpose of the statute may be carried into effect with this eliminated. *Templar* v. *State Board of Examiners of Barbers*, 131 Mich. 254.

The objection is also made that this is class legislation because certain classes of children are excepted from the operation of the act. It is true that certain classes of children are excepted, that is, children who are inmates of other institutions. We do not regard this as class legislation in any objectionable sense. It appears by the return that there are in the city of Detroit a number of private institutions incorporated under the laws of the State, charitable or semi-charitable in character, which receive as inmates and exercise custody and control over children under the age of 17. Section 3 of Act No. 41 of the Public Acts of 1899 confers upon the State board of corrections and charities visitorial power as to every society, association, and organization incorporated or which may hereafter be incorporated under the laws of this State, the whole or a part of the business of which is to receive, maintain or place minor children in homes, on indenture by adoption or otherwise.

The exception of children in such homes which are subject to the visitorial powers of the board of corrections and charities is not in any invidious sense class legislation. The object of the legislation doubtless was, as suggested, to confine the operation of the act so far as possible to children whose residence was in the city. But independent of this the purpose of this statute in the main is beneficent, and is the purpose of guardianship of children who need the care of government. The legislature evidently deemed that children already under such guardianship did not call as loudly for the safeguards which this statute

throws around delinquents as did those who were not subject to these influences.

It would hardly be called class legislation to say that orphan children might be cared for under such a statute as this, with no provision made for children who are in the family with their parents. The distinction is the same in principle. The children in these various homes are already wards of institutions which exist for the purpose of caring for their welfare. The same necessity does not exist for the intervention of government as in the case of children less fortunate.

This brings us to a consideration of the most important question. Are the proceedings provided for by this act criminal proceedings in such sense as to entitle the accused delinquent child to a trial by a constitutional jury of 12? Were the only judgment open upon the trial whether to commit the child to the custody of a probation officer or to the Industrial School for Boys or the Industrial School for Girls, as the case might be, there would be little difficulty in saying that this proceeding is not, in a proper sense of the term, a criminal proceeding. In a large number of cases considered by the courts of last resort in various States similar legislation has been under consideration. The beneficent character of legislation making provision for the care of unfortunate, delinquent, or neglected children has been generally recognized. But a single case has fallen under our notice in which the court has looked with jealousy upon legislation of this character, and that is the case of *People, ex rel. O'Connell*, v. *Turner*, 55 Ill. 280, a case which, in its essential features, has been discredited by a later decision of the supreme court of Illinois in *Petition of Ferrier*, 103 Ill. 367, and which is now chiefly notable as an example of the vigor with which that which is not the law may be stated. But in the following cases, *Ex parte Crouse*, 4 Whart. (Pa.) 11; *Commonwealth* v. *Fisher*, 213 Pa. 48; *State* v. *Brown*, 50 Minn. 353 (16 L. R. A. 691); *Milwaukee Industrial School* v. *Milwaukee*

*County Sup'rs,* 40 Wis. 328; *Mill* v. *Brown,* 88 Pac. (Utah) 609, the distinction is noted between cases of this character in which the investigation is into the status or needs of the child, and a case where his offenses are being considered for the purpose of administering punishment. See, also, *Hunt* v. *Wayne Circuit Judges,* 142 Mich. 93.

As was said in *State* v. *Brown :*

"A person committed to the care and custody of a person in charge of an institution of the character of the Minnesota State reform school is not 'punished' nor is he 'imprisoned' in the ordinary meaning of those words."

So in the *Petition of Ferrier,* it was said:

"This is not a proceeding according to the course of the common law, in which the right of a trial by jury is guaranteed, but the proceeding is a statutory one, and the statute, too, enacted since the adoption of the constitution.    There was not, at the time of such adoption, the enjoyment of a jury trial in such a case."

Quoting Cooley on Constitutional Limitations (7th Ed.), where, at p. 459, it is said:

"In those cases which formerly were not triable by jury, if the legislature provide for such a trial now, they may doubtless create for the purpose a statutory tribunal, composed of any number of persons, and no question of constitutional power or right could arise."

Such legislation as that under consideration is but a transfer of the jurisdiction which formerly reposed in the court of chancery, in the exercise of the right of the king as parens patria to the guardianship of children, to the juvenile courts which perform the duty of seeing that the child is properly cared for.

We are satisfied that, so far as the law authorizes the determination of the status of the child, and authorizes the commitment of the child to the custody of a probation officer or to the custody of the keeper of one of the industrial schools for the purpose of education and reformation, the proceeding may be said not to be a criminal proceeding.

A difficulty, however, is encountered in sustaining this

statute, which is regrettable in view of its beneficent purpose. The statute, it is true, declares that the proceedings shall not be taken to be criminal proceedings in any sense, and yet by section 14 it is provided that if the child be adjudged a delinquent child the court may place the case on trial and impose a fine not to exceed $25, with costs, etc. This can have no other purpose than punishment for a delinquency, which means nothing less or at least includes one who violates any law of this State or any city ordinance.

It is contended that it does not necessarily follow, from the fact that a fine is imposed, that the proceeding is a criminal prosecution, and reliance is placed upon *People v. Jackson*, 8 Mich. 110; *People, ex rel. Fennell,* v. *Bay City Common Council,* 36 Mich. 186; *People, ex rel. Mixer,* v. *Board of Sup'rs of Manistee Co.*, 26 Mich. 422; and *People* v. *Smith,* 146 Mich. 193. These cases are all cases relating to an infringement of a by-law of a city, and in one sense, as was said in *Mixer's Case,* the term "criminal cases" used in the laws refers to none but prosecutions under the State laws, and that no offense is a crime which does not violate the law of the land.

In the present case, however, this statute is a State law providing for a penalty. A complaint, an arrest, and trial are authorized, and, upon a determination, the imposition of a fine. It is difficult to conceive of any element of a criminal prosecution which may be said to be lacking. And as section 28 of article 6 of the Constitution very plainly provides for a jury of 12 men in all courts of record in every criminal prosecution, the provision for a jury of six for the trial of delinquents is in violation of this section.

For this reason the circuit judges were right in refusing to recognize the validity of the law, and the writ will be denied. We have confined our discussion to imperfections pointed out by counsel.

OSTRANDER, HOOKER, CARPENTER, and MCALVAY, JJ., concurred.