STATE ex rel. COUNTY OF STEARNS v. ALBERT H.. KLASEN.[1]

November 14, 1913.

Nos. 18,397—(19).

**Act repealed.**

1. Laws 1913, c. 260, giving the probate court in counties having less than

[1] Reported in 143 N. W. 984.

---

Note.—On the question of state guardianship of children, see note in 15. L.R.A. 593.

50,000 inhabitants jurisdiction of cases under the juvenile court act, repeals Laws 1913, c. 43, giving the district court exclusive jurisdiction of such cases in counties having a population of not less than 33,000.

**Control of children by the state.**

2. The state, as *parens patriae*, has the power to assume or provide for the custody and control of a child upon the sole ground of the financial inability of the parent to support it, whenever the breach of the parental trust thus involved constitutes a menace to the fundamental welfare of the child.

**Dependent and neglected children.**

3. A child dependent upon the public for support is within the terms of Laws 1913, c. 260, and hence within Laws 1913, c. 130, though the sole reason of such dependency is the financial inability of its parent to support it, and though there is neither delinquency on the part of the child nor other unfitness on the part of the parent.

**Mothers' pension law.**

4. The general statutory system of providing for the poor neither curtails the power of the legislature to enact such legislation as that contained in Laws 1913, c. 130, known as the "Mothers' Pension Law," nor prevents its enforcement.

**Same — where operative.**

5. The relief provided for by chapter 130 is not a matter of purely local municipal concern, and its provisions are operative in a county wherein the town system of caring for the poor prevails, as well as elsewhere, and also in a city in such county notwithstanding that it maintains its own pauper system.

**Same — evidence.**

6. The probate court *held*, on the facts, properly to have exercised its power to grant relief under chapter 130.

**Joint application.**

7. There was no error or impropriety in entertaining a joint application for relief under the statute, in behalf of several children of the same parents residing with their mother.

A member of the board of charities of the city of St. Cloud petitioned the probate court for Stearns county to name Eva F. Donnelly the guardian of her six dependent children, all under the age of 10, and to fix the amount of money not

exceeding $10 per month for each of said children which it deemed necessary for the county to contribute toward their support in the home of their mother. In behalf of Stearns county the county attorney moved that the application for aid for the delinquent children be dismissed, and that the aid be not granted. The court, Klasen, J., made findings and pursuant to Laws 1913, c. 130, and Laws 1909, c. 232, as amended by Laws 1913, c. 260, determined that the children were dependent and neglected, and under the age of 14 years, and ordered that they be committed to the care of their mother, who was appointed guardian of their persons and estates, and that the county of Stearns be required to contribute toward the support of the children in the home of their mother the sum of $15 per month, to continue until the children respectively attained the age of 14 years or until the further order of the court; provided, however, that all of the allowance should terminate with the discharge of the husband of said Eva F. Donnelly from the penal institution of the state where he was then confined. Upon the relation of the county of Stearns this court issued its writ of certiorari to review the order of the probate court. Affirmed.

*Paul Ahles,* County Attorney, for relator.

*Jenks & Quigley,* for respondent.

*Lyndon A. Smith,* Attorney General, *amicus curiae,* filed a brief on the question whether the probate court of Stearns county had jurisdiction over the subject-matter of the proceedings under review.

PHILIP E. BROWN, J.

Certiorari to review an order of the probate court of Stearns county, of date July 29, 1913, determining certain children to be destitute and dependent upon the public for support, committing them to the care and custody of their mother, appointing her the guardian of their persons and estate, and directing the county to contribute $15 per month towards their support.

1. Did the probate court have jurisdiction? Laws 1905, p. 418, c. 285 (the juvenile court act) defined dependent, neglected, and delinquent children, authorized the district court in counties whose population exceeded 50,000 to dispose of such children, and pro-

vided the procedure in such cases. Laws 1909, p. 269, c. 232, was similar, except that it applied to counties having a population of less than 50,000, and gave the judge of probate jurisdiction. Laws 1913, p. 37, c. 43, amends the act of 1905 by giving the district court of counties having, or which hereafter may have, not less than 33,000 inhabitants, original and exclusive jurisdiction in all cases coming within the terms of the act. Laws 1913, p. 356, c. 260, amends the act of 1909 by practically re-enacting it with numerous additions relating to both procedure and substance. It retains the provisions of the former act giving the probate judge jurisdiction and that making its terms applicable to all counties having a population of less than 50,000, and expressly repeals all acts and parts of acts inconsistent therewith.

Stearns county's population exceeds 33,000, and is less than 50,000. It is claimed that chapter 43 was not repealed by chapter 260, under the rule thus fully stated in Powell v. King, 78 Minn. 83, 80 N. W. 850:

"A later law which is merely a re-enactment of a former does not repeal an intermediate act which has qualified or limited the. first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first."

Hence, it is contended, the district court, in any event, had "original and exclusive jurisdiction" of this proceeding. It may be conceded that chapter 43 is an intermediate act within the rule; for it necessarily qualifies the operation of both the 1905 and the 1909 laws, by enlarging the jurisdiction of the district court and restricting that of the probate court. The principle stated, however, is a mere canon of construction, or aid to the ascertainment of legislative intent, and must yield to the latter. Winters v. City of Duluth, 82 Minn. 127, 84 N. W. 788; Hawes v. Fliegler, 87 Minn. 319, 92 N. W. 223. Laws are presumed to have been passed with deliberation, and with full knowledge of all existing ones on the same subject. Gaston v. Merriam, 33 Minn. 271, 283, 22 N. W. 614. Chapter 260 is a carefully prepared act, and when we consider its provisions in the light of the facts that it was passed only about a month after chapter

123 M.—25.

43, and that the latter, by reason of its somewhat arbitrary basis of classification, has a very limited application, we reach the conclusion that the provisions of the two acts are so irreconcilably inconsistent that they cannot stand together, and that chapter 260 repealed chapter 43. See Gaston v. Merriam, supra, and cases cited; State v. St. Paul, M. & M. Ry. Co. 40 Minn. 353, 42 N. W. 21; Hawes v. Fliegler, supra, 323. This conclusion is not induced by consideration of the practical difficulties which would be encountered in the administration of the juvenile court act by the district court in counties having less than 50,000, though more than 33,000, inhabitants, but is nevertheless materially strengthened thereby.

2. The order under review was made pursuant to chapter 260, as supplemented by Laws 1913, p. 148, c. 130, known as the "Mothers' Pension Law," which latter requires a finding that the children to be dealt with are dependent or neglected within the meaning of the act of 1905 or 1909, as amended, or R. L. 1905, c. 27, and authorizes the court, if other requisite conditions appear, to permit the child to remain in the custody of its mother, and to fix the amount, not exceeding $10 per month, the county shall contribute towards its support. The question, then, is: Were the children "dependent" within the meaning of chapter 260? That they were within the literal terms of the statute cannot be doubted, for they were admittedly "dependent upon the public for support," but relator insists that, except in cases of children without parents or relatives, the dependency contemplated by statute imports more than mere poverty or pauperism, and involves some delinquency on the part of the child or unfitness, other than financial, of the parent. In our opinion, however, the state, as *parens patriae,* has the power to assume the custody and control of a child contemplated by chapter 260, upon the sole ground of the parent's financial inability to support it, and the statute provides for its exercise. In a state of organized society the rights of the parent are largely subordinate to those of the community, and whenever a breach of the parental trust occurs, no matter from what cause, of such a character that the fundamental welfare of the child is actually endangered, at that moment the state's right to assume its guardianship arises. See State v. Brown, 50

Minn. 353, 359, 52 N. W. 935, 16 L.R.A. 691, 36 Am. St. 651; Robison v. Wayne Circuit Judges, 151 Mich. 315, 115 N. W. 682; Nugent v. Powell, 4 Wyo. 173, 193, et seq., 33 Pac. 23, 20 L.R.A. 199, 62 Am. St. 17; Mill v. Brown, 31 Utah, 473, 482, 88 Pac. 609, 120 Am. St. 952, note; Re Sharp, 15 Idaho, 120, 96 Pac. 563, 18 L.R.A.(N.S.) 886, and note; Prime v. Foote, 63 N. H. 52; Ex parte Loving, 178 Mo. 194, 219, et seq., 77 S. W. 508; Moore v. Dozier, 128 Ga. 90, 92, 57 S. E. 110; Farnham v. Pierce, 141 Mass. 203, 6 N. E. 830, 55 Am. Rep. 52. The principle involved is that of social self-protection, reinforced by the dictates of enlightened humanity. Its application where criminality of the child is imminent by reason of the depravity of its surroundings is settled beyond controversy, and we cannot subscribe to any doctrine that would hold the state's right to intervene in abeyance until ill nurture and squalid surroundings, which well-nigh inevitably result in physical and mental disease, have ripened into degeneracy, itself closely akin to criminality. Furthermore, it is as much the province of the state to look to the physical and mental well-being, as such, of its future citizens —witness our health and compulsory education laws—as to provide against their growing up in crime. The state has power in the premises whenever the child's poverty reaches a menacing stage. See Clark v. Bayer, 32 Oh. St. 299, 310, 30 Am. Rep. 593; Milwaukee Ind. School v. Supervisors, 40 Wis. 328, 22 Am. Rep. 702; Van Walters v. Board of Childrens' Guardians, 132 Ind. 567, 32 N. E. 568, 18 L.R.A. 431. Neither State v. Merrill, 83 Minn. 252, 86 N. W. 89, nor Armstrong v. Board of Control of State Public School, 88 Minn. 352, 93 N. W. 3, referred to by relator, militates against this conclusion.

This does not mean that family ties are lightly to be regarded. Nor will it do to say broadly that poverty either will or will not justify severance of the fundamental relation involved in parental custody. Poverty is relative, and the evils incident thereto are variant. See Ex parte Loving, supra, 217. It is both right and proper, therefore, that the state, in providing for the exercise of its power to assume guardianship on such account, should declare the condition justifying action in terms sufficiently flexible to meet the

demands of the environment in each particular case. This the legisture has done in defining "dependent child" as one "dependent upon the public for support."

The statute does not require or command assumption of state guardianship in all cases of dependency, but merely authorizes it, thus rendering all considerations of reasonableness material only in the proceedings thereby provided for, as distinguished from the statute itself; and its practical application should be guarded carefully, lest its manifestly beneficent purpose of safe-guarding both the individual and the common welfare be defeated by unwarranted invasions of the domain of the natural family. Indeed, the preservation of this institution seems to be one of the prime purposes of chapter 130, which provides the means of relief, in proper cases, without breaking up the home, and at the same time leaves room in the state institutions for those who must go there.

The general statutory system for providing for the poor neither curtails the power of the legislature to enact such legislation as that contained in chapter 130, nor prevents its enforcement. The purpose of this statute is wider and involves a broader humanity and larger foresight. Nor is it material that under Sp. Laws 1877, p. 293, c. 234, the town system of caring for the poor prevails in Stearns county, whereby it is the duty of the city of St. Cloud to care for its own poor. The relief provided for by chapter 130 is not a matter of purely local municipal concern. See Robison v. Wayne Circuit Judges, supra, 321. If the city does not provide sufficient support to meet the reasonable needs of its dependent children within the purview of this act, its provisions may be invoked, and the city, though maintaining its own pauper system, may be called upon to contribute its share to the administration of the general law.

3. The probate court followed the terms of chapters 260 and 130, and found, on sufficient evidence, all the prerequisites to relief thereunder. It appeared that the city furnished $25 per month towards the maintenance of the family, which consisted of the mother and six children ranging from one to nine years old, and that they had no other means of sustenance. We are satisfied that the court properly exercised its power to grant relief.

The point is made that the court should not have considered, as it did, a joint application in behalf of all the children of the same parents residing with their mother. Aside from the fact that section one of chapter 260 apparently authorizes such practice, we would sustain it; for no prejudice could result therefrom, and manifestly no purpose would be subserved in requiring separate applications; nor would the court be required to make the same order with reference to all the children.

Order affirmed.