**ROYAL MINERAL ASS'N et al. v. LORD et al., and six other cases.**

(District Court, D. Minnesota, Fifth Division. January 15, 1926.)

Nos. 99, 100, 102, 111, 119, 124, 125.

1. **Licenses ⬤➡1, 32(2)—State tax on mining, based on value of ore mined, held occupation tax, collectible by suit against person from whom due (Laws Minn. 1921, c. 223).**

Tax imposed by Laws Minn. 1921, c. 223, on mining within state, based on value of ore mined, is an occupation tax, collectible by suit against person from whom it is due, as other demands are enforceable.

2. **Constitutional law ⬤➡119.**

All contracts are made subject to right of state to change tax laws, and such change will not impair obligation of contracts in contravention of Const. art. 1, § 10.

3. **Courts ⬤➡370—Federal courts will not declare state statute to be violative of uniform taxation clause of state Constitution before decision by state Supreme Court, unless imperatively necessary, and then case will try to anticipate state court's decision (Const. Minn. art. 9, § 1).**

Federal courts will not declare state statute violates provision of state Constitution (arti-

cle 9, § 1), requiring uniform taxation, before declaration of state Supreme Court so declaring, especially where revenues of state are involved, unless imperatively necessary, and in such case will seek to anticipate state court's holding and decide accordingly.

4. **Taxation ⬤➡42(1)—Under decisions of Minnesota Supreme Court, Legislature has wide discretion respecting classification for taxation, so long as it is reasonable and suggested by essential differences (Const. Minn. art. 9, § 1).**

Under decisions of Minnesota Supreme Court construing Const. Minn. art. 9, § 1, respecting classification for taxation, Legislature has very wide discretion, so long as classification is reasonable and suggested by essential differences.

5. **Constitutional law ⬤➡229(1), 283—Taxation ⬤➡42(1).**

Under due process and equal protection clauses of Fourteenth Amendment to the federal Constitution and clause of state Constitution (article 9, § 1), requiring uniformity, classification in state taxing statute must be reasonable and suggested by essential differences but Legislature has wide discretion.

6. **Constitutional law ⬤➡229(1).**

Equal protection clause of Fourteenth Amendment to federal Constitution does not prohibit double taxation by states.

7. **Taxation ⬤➡42(1).**

Classification for taxation must not be exercised in clear and hostile discrimination between particular persons and classes.

8. **Constitutional law ⬤➡209.**

Equal protection clause does not require state laws to cover entire field of proper legislation in single enactment.

9. **Constitutional law ⬤➡48.**

Burden of proof is on one asserting that classification in state taxing statute is unreasonable.

10. **Taxation ⬤➡42(1).**

Exemption of mining properties, not in process of being wasted or depleted, from royalty tax on mining imposed by Laws Minn. 1923, c. 226, does not invalidate tax.

11. **Taxation ⬤➡40(1).**

Taxing statute is not invalid because it may be subject to technical criticism, or will not work with perfect nicety of detail, or because it involves differences and inequalities.

12. **Taxation ⬤➡58—That money and credits, received as royalty, were taxed during year, held not to invalidate state statute taxing mining royalties (Laws Minn. 1923, c. 226).**

That mining company was taxed for money and credits on account of moneys received on royalties *held* not to invalidate Laws Minn. 1923, c. 226, imposing royalty tax on mining.

13. **Taxation ⬤➡42(1).**

That Laws Minn. 1923, c. 226, imposing royalty tax on mining does not include quarries or other wasting properties, does not invalidate classification.

**14. Constitutional law** ⊕⊸48.

Where law is clearly unconstitutional, court should not hesitate to so declare, but, in absence of such proof, or in case of doubt, law should stand.

**15. Constitutional law** ⊕⊸229(1), 283—**Taxation** ⊕⊸40(1)—**State statute taxing mining royalties held not violative of requirement of uniformity of taxation, due process, or equal protection clauses (Laws Minn. 1923, c. 226; Const. Minn. art. 9, § 1; Const. U. S. Amend. 14).**

Laws Minn. 1923, c. 226, taxing mining royalties received for permission to explore, mine, and remove ore from land in state, held not violative of Const. Minn. art. 9, § 1, requiring uniformity of taxation, nor of due process or equal protection clauses of Fourteenth Amendment to federal Constitution.

**16. Statutes** ⊕⊸245.

Character of tax depends on legislative intent as expressed in statute.

**17. Taxation** ⊕⊸58—**State statute taxing mining royalties held not invalid in that situs of royalties is not within state's jurisdiction (Laws Minn. 1923, c. 226).**

Laws Minn. 1923, c. 226, taxing mining royalties, held not invalid as to nonresidents as against contention that as to them situs of royalties is never within state's jurisdiction, even if statute be construed as levying direct tax on royalties.

**18. Taxation** ⊕⊸63—**Statute taxing mining royalties held tax on interest in land owned by person by whom tax should be paid (Laws Minn. 1923, c. 226).**

Laws Minn. 1923, c. 226, taxing mining royalties received for permission to explore, mine, and remove ore from land in state, is tax on interest in land owned by person by whom tax should be paid.

In Equity. Separate suits by the Royal Mineral Association and others, by William E. Boeing and others, by Robert B. Whiteside and others, by the Lake Superior Consolidated Iron Mines and others, by George L. Burrows, Jr., and others, by the Merrimac Mining Company, and by Helen P. Bardwell and others, against Samuel Lord, the Sargent Land Company, and others, to enjoin defendants from enforcing Laws Minn. 1923, c. 226, taxing royalties received for permission to explore, mine, take out, and remove ore from land in such state, and to have said act declared unconstitutional and void. Decree for defendants.

Decree affirmed 46 S. Ct. 627, 70 L. Ed.
——.

Washburn, Bailey & Mitchell, of Duluth, Minn., for plaintiffs Royal Mineral Ass'n and Boeing and others.

W. D. Bailey and J. W. Hunt, both of Duluth, Minn., for plaintiffs Whiteside, Merrimac Mining Co., and others.

C. A. Severance, George W. Morgan, and Davis, Severance & Morgan, all of St. Paul, Minn., and Frank D. Adams and Elmer F. Blu, both of Duluth, Minn., for plaintiffs Lake Superior Consol. Iron Mines and others.

Mitchell, Doherty, Rumble, Bunn & Butler, of St. Paul, Minn., Beaumont, Smith & Harris, of Detroit, Mich., Weadock & Weadock, of Saginaw, Mich., and M. J. Cavanaugh, of Ann Arbor, Mich., for plaintiffs Burrows and others.

John R. Van Derlip, Fred B. Snyder, Edward C. Gale, and Snyder, Gale & Richards, all of Minneapolis, Minn., for plaintiffs Bardwell and others.

L. P. McNally, of Minneapolis, Minn., for defendant Sargent Land Co.

Clifford L. Hilton, Atty. Gen., G. A. Youngquist, Asst. Atty. Gen., and Patrick J. Ryan, of St. Paul, Minn., for all other defendants.

CANT, District Judge. [1] During the year 1921, the Legislature of the state of Minnesota enacted chapter 223 of the laws of that year. This act provided for the levy of a tax payable annually and amounting to 6 per cent. of the valuation of all ore mined or produced within the state during the calendar year. Under the act such valuation is ascertained by making certain deductions from the value of such ore at the place where the same is brought to the surface of the earth. Among such deductions is: "4. The amount of royalties paid on the ore mined or produced during the year." Section 2. This is an occupation tax. Oliver Iron Mining Co. v. Lord et al., 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929. It is collectible by suit against the person from whom the same is due the same as other demands are enforceable.

During the year 1923, the Legislature of that state enacted chapter 226 of the laws of that year. This act provides that "there shall be levied and collected upon all royalty received during the year ending December 31, 1923, and upon all royalty received during each calendar year thereafter, for permission to explore, mine, and take out and remove ore from land in this state, a tax of six (6) per cent." Section 1. By section 8 of the act this tax is made a specific lien on the interest of the person from whom the tax shall be due, in and to the land on account of which the royalties are paid. Provision is also made for collection of the amount due by suit and by a sale thereunder of the interest in such land held by the person from whom the tax shall be due.

Various persons and corporations who are in receipt of royalty from ore lands in said state urge that the tax imposed under chapter 226, supra, is in violation of certain provisions of the Constitution of the state of Minnesota, and of certain other provisions of the Constitution of the United States, and they have brought a number of actions, of which this is one, to enjoin the enforcement of the tax. In a large way, the question is whether the act runs counter to any of the constitutional provisions which have been invoked.

The important provision of the state Constitution which is involved is that "taxes shall be uniform upon the same class of subjects." Article 9, § 1.

The important provisions of the Constitution of the United States which are involved are found in that part of the Fourteenth Amendment which reads: "Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[2] Other constitutional provisions have been discussed on the argument and in the briefs. Without overlooking or minimizing the force of any of them, it may be said that they are either involved in a discussion of the specific provisions above set forth, or they yield to the argument which may be made against them. It is urged, for example, that the act violates that provision of the Constitution of the United States which provides that "no state shall * * * pass any * * * law impairing the obligation of contracts." Article 1, § 10. Giving the argument in that behalf due weight and consideration, it does not appear that the provision referred to is applicable here. The laws as to taxation and the amount of the levy in any particular year are subject to constant change. All contracts are made subject to the right and the power of the state to make such modification in the laws with respect to future taxation as may seem necessary. Contracting parties may not in effect agree that the state shall not modify its revenue laws, or shall not either increase or diminish the burden of taxation. If the enactment in question is otherwise valid, it will stand as against this objection.

Speaking generally, unless the act in question is invalid as against the uniformity clause of the state Constitution, with reference to taxation, above quoted, or as against the due process or equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, above quoted, it must stand. These provisions and the discussion thereunder are closely related in a case of this kind. The matter may be reduced to still lower terms. The question is whether this court should hold that the classification, royalties, adopted by the Legislature of the state of Minnesota, as a basis of taxation, or for the computation of the tax under chapter 226, Laws of Minnesota 1923, is invalid, and that the tax levied pursuant thereto is void.

[3, 4] 1. The following rules are specially applicable to the uniformity clause of the state Constitution:

(a) Where that clause is invoked in advance of a decision by the Supreme Court of the state, holding a state law to be in violation thereof, federal courts will not so declare, unless such holding shall be imperatively necessary. If there has been no decision by the Supreme Court of the state, the federal court will seek to anticipate what the holding of the state court would be, and will decide accordingly. Louisville & Nashville R. R. Co. v. Garrett et al., 231 U. S. 298, 305, 34 S. Ct. 48, 58 L. Ed. 229; Pelton v. National Bank, 101 U. S. 143, 144, 25 L. Ed. 901; Pullman v. Knott, 235 U. S. 23, 27, 35 S. Ct. 2, 59 L. Ed. 105; Michigan Central R. R. Co. v. Powers, 201 U. S. 245, 291, 26 S. Ct. 459, 50 L. Ed. 744; Coulter v. Louisville & Nashville R. R. Co., 196 U. S. 599, 609, 25 S. Ct. 342, 49 L. Ed. 615.

(b) The two cases last above referred to clearly indicate that the federal courts are especially loth to interfere where the act in question involves the revenues of the state.

(c) The Supreme Court of the state of Minnesota has not passed upon the validity of the act in question.

(d) The holdings of the Supreme Court of the state of Minnesota, as respects classification for the purpose of taxation, are that the Legislature has a very wide range of discretionary power. Mutual Benefit Insurance Co. v. County of Martin, 104 Minn. 179, 181, 116 N. W. 572; State v. Royal Mineral Ass'n, 132 Minn. 232, 235, 156 N. W. 128, Ann. Cas. 1918A, 145. There are well-recognized limitations to this power which serve as guides in the exercise thereof. "The classification must be reasonable, and such as is suggested by essential differences of nature, situation, or circumstances, or by characteristics, which make it desirable on grounds of public policy to apply to the members of the class a particular method of taxation, and impracticable to apply thereto the ordinary methods of taxation." Mutual Benefit Insurance Co. v. County of Martin, 104 Minn. 179, 181, 182, 116 N. W. 572, 573; State ex rel. St. Paul

City Ry. Co. v. Minnesota Tax Commission, 128 Minn. 384, 150 N. W. 1087.

[5-7] 2. The following rules are applicable to cases where the due process clause or the equal protection clause of the Fourteenth Amendment is invoked, or where one or both of those clauses and the uniformity clause of the state Constitution are involved:

(a) Under all the authorities the classification must be a reasonable one and such as essential differences suggest. State ex rel. v. Minnesota Tax Commission, 128 Minn. 384, 150 N. W. 1087; Gulf, Colorado & S. F. Ry. Co. v. Ellis, 165 U. S. 150, 155, 17 S. Ct. 255, 41 L. Ed. 666; Southern Ry. Co. v. Greene, 216 U. S. 400, 417, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247.

(b) The decided policy of the Supreme Court of the United States when the foregoing clauses are invoked is to announce and enforce the rule allowing state Legislatures a wide discretionary power with respect to classification for purposes of taxation. Bell's Gap R. R. Co. v. Penn., 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892.

"Granting the power of classification, we must grant government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous. Keeney [as Adm'r] v. New York [Comptroller, etc., of] 222 U. S. 525, 536 [32 S. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139]. The state is not bound by any rigid equality." Citizens' Tel. Co. v. Fuller, 229 U. S. 322, 331, 33 S. Ct. 833, 836 (57 L. Ed. 1206).

"Any classification is permissible which has a reasonable relation to some permitted end of governmental action. It is not necessary * * * that the basis of the classification must be deducible from the nature of the things classified. * * * It is enough, for instance, if the classification is reasonably founded in 'the purposes and policy of taxation.'" Watson v. State Comptroller, 254 U. S. 122, 124, 125, 41 S. Ct. 43, 44 (65 L. Ed. 170); Heisler v. Thomas Colliery Co., 260 U. S. 245, 255, 43 S. Ct. 83, 67 L. Ed. 237.

"Passing on that amendment [the Fourteenth], we have repeatedly decided * * * that it does not take from the states the power of classification. And also that such classification need not be either logically appropriate or scientifically accurate. * * * A wide range of discretion, therefore, is necessary in legislation to make it practical." District of Columbia v. Brooke, 214 U. S. 138, 150, 29 S. Ct. 560, 563 (53 L. Ed. 941).

"There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds. The equal protection clause does not require that state laws shall cover the entire field of proper legislation in a single enactment." Middleton v. Texas Power & Light Co., 249 U. S. 152, 157, 39 S. Ct. 227, 229 (63 L. Ed. 527).

Without extended discussion, the same view is taken in National Paper & Type Co. v. Frank K. Bowers, Collector, 266 U. S. 373, 45 S. Ct. 133, 69 L. Ed. 331 (Dec. 15, 1924).

The equal protection clause of the Fourteenth Amendment does not prohibit double taxation by the states. Shaffer v. Carter, 252 U. S. 37, 58, 40 S. Ct. 221, 64 L. Ed. 445; Cream of Wheat Co. v. Grand Forks, 253 U. S. 325, 330, 40 S. Ct. 558, 64 L. Ed. 931.

(c) The limitation upon this power of classification is that "it must not be exercised in 'clear and hostile discriminations between particular persons and classes.'" Citizens' Tel. Co. v. Fuller, 229 U. S. 322, 331, 33 S. Ct. 833, 836 (57 L. Ed. 1206); Heisler v. Thomas Colliery Co., 260 U. S. 245, 255, 43 S. Ct. 83, 67 L. Ed. 237; Bell's Gap R. R. Co. v. Penn., 134 U. S. 232, 237, 10 S. Ct. 533, 33 L. Ed. 892.

(d) In Dawson v. Kentucky Distilleries Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638:

(1) The court was dealing with a nondescript imposition from the beginning.

(2) The basis of the alleged classification and tax was elusive, shifty, and unsatisfactory. It was not uniform on property of essentially the same class.

(3) The act "imposed upon every person engaged in the business of manufacturing whisky, or in the business of owning and storing the same in bonded warehouses within the state, what was called an 'annual license tax' of fifty cents a gallon upon all whisky either withdrawn from bond or transferred in bond from Kentucky to a point outside the state."

(4) Though called an annual license tax in the act, the imposition was held to be a tax on the property.

(5) On the argument it was conceded by the authorities seeking to uphold the tax that, if it was a tax on property, the same was void.

(6) In view of the concession so made, the question of classification was not given extended discussion by the court.

3. Various facts bearing upon the propriety and justice of the classification here involved must be considered. The iron deposits constitute a very substantial part of

the easily available great natural wealth of the state of Minnesota. Development and operation of iron mines, a highly necessary and important industry, means at the same time the exhaustion of that wealth. Such exhaustion attends also the removal of the products of stone quarries and of gravel beds and the cutting and removal of certain kinds of timber. Generally, the development and successful prosecution of any enterprise increases the taxable wealth of the state. In large part, the products of quarries, gravel beds, and forests remain within the state and in some form serve as the basis of taxation therein. With respect to iron ore, however, practically all that is mined is being transported beyond the limits of the state. Great natural wealth which serves as the basis of taxation is annually being withdrawn therefrom. Of necessity the revenues of the state will be substantially affected thereby.

4. Without doubt, when the Legislature of 1923 met and considered problems of taxation, it knew of chapter 223, Laws of 1921. State v. Klasen, 123 Minn. 382, 143 N. W. 984, 49 L. R. A. (N. S.) 597. That act was presumably valid. On its face, it pointed to the fact that one of the interests concerned in the mining industry was thereby subjected to a tax of 6 per cent. It also disclosed the fact that in cases where the mine was leased the other interest, that represented by the person who received royalties, was not subjected to any such burden. The Legislature found this latter class already carved out by the earlier act. In 1923 the general purpose apparently was to assure the state a return of a full 6 per cent., less certain minor deductions, on the value of all ore mined and brought to the surface of the earth. And the further general purpose apparently was to adjust this burden equitably as between the two classes of interests concerned in the operation where the mine was being operated by a lessee. One of these classes, represented by the operator, was specified in chapter 223, supra, and the tax burden by that act was imposed thereon. The other interest, represented by those receiving royalties, was specified in chapter 226, Laws of 1923, and a tax in a different form was imposed on that class. The latter act was designed to complement the former, which related to the same general subject-matter. In the consideration of this case, it is neither possible nor proper to divorce entirely the two acts which have been referred to. Either separately or together they indicate the policy of the state with reference to the taxation of the interests therein specified.

[8] 5. The federal Constitution does not require that the two classes above referred to should have been covered by the same enactment, or that the two together should have exhausted the subject and covered the entire field. "The equal protection clause does not require that state laws shall cover the entire field of proper legislation in a single enactment." Supra.

6. The basis of classification which may be invoked in support of chapter 226 is the circumstance or condition that, of necessity, the lands to which the act applies, in the course of their development as operating mines, are being and will be depleted in value, and ultimately will be lost to the state as a source of substantial revenue. This is the underlying consideration. The desire of the Legislature was to reach the interests involved in property of that class and apply thereto a special tax. If such lands may properly be placed in a class by themselves, the rest is a matter of identifying the interests therein for the purpose of taxation. This latter may be called classification of such interests, but it is little more than identification thereof, a pointing out and specifying of the particular interests sought to be taxed.

[9] 7. We are concerned to learn whether there was reasonable ground for this classification, and whether, under the provisions of the act, all within the class involved in chapter 226 may be treated alike. The burden is on the plaintiff to answer one or both of these questions clearly in the negative. If there has been no "clear and hostile discrimination between particular persons and classes," the law should stand.

[10] Having in mind the real basis for the classification adopted, the fact that other mining properties, not in process of being wasted or depleted, are not included under the provisions of the act, is not important. This is true whether they are being sold and transferred from time to time, like other property, or are not. With the lapse of time, as such properties come within the class contemplated, the act will apply. In time, presumably all ore-bearing properties of substantial value in the state will become subject to the provisions of the law in question.

[11] Chapter 226 is not invalid, because it may be subject to technical criticism, or will not work with perfect nicety of detail, or because conditions may be thought of which would seem to involve differences and inequalities.

"The difference, however, is only such as arises naturally from the extent of the jurisdiction of the state in the two classes of cases,

and cannot be regarded as an unfriendly or unreasonable discrimination." Shaffer v. Carter, 252 U. S. 37, 57, 40 S. Ct. 221, 227 (64 L. Ed. 445).

In Oliver Iron Mining Co. v. Lord et al., 262 U. S. 172, 181, 43 S. Ct. 526, 530 (67 L. Ed. 929), the court says: "It also is said that the royalty provision and others respecting deductions will work a discrimination as between lessees, in that some will be subjected to a higher tax than others. No doubt there will be differences in the amount, but they will result from differences in situation and not from differences in treatment. Some lessees pay higher royalties than others and will secure a higher deduction on that score. * * * In short, the tax is to be adjusted to the value of the output less the major expenses of the business, and this according to uniform rules. We therefore cannot say that it is intended to or will work any arbitrary or unreasonable discrimination as between different lessees."

[12] The circumstance that during the year 1923, plaintiff may have been assessed under the head of "money and credits," on account of funds then on hand and received as royalties during that year, falls within the foregoing observations and authorities.

[13] The fact that other wasting properties, such as stone quarries or gravel beds, or certain timber areas, are not included in the act here under consideration, does not invalidate the classification. They might have been included, but the differences and distinctions between them and that which was included justifies their omission. The differences upon which to base a classification "need not be great or conspicuous." Supra. Anthracite coal may be classified separately from bituminous coal. Meat packing may be classified separately from the packing of other food products. A special tax may be imposed on dealers in certain specified articles, while dealers in other articles go free. Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; Armour Packing Co. v. Lacy, 200 U. S. 226, 26 S. Ct. 232, 50 L. Ed. 451; Southwestern Oil Co. v. Texas, 217 U. S. 114, 121, 30 S. Ct. 496, 54 L. Ed. 688.

8. The Legislature has made the classification. First, in a class by themselves, are the ore lands which are in process of being mined, and therefore depleted, and which within a comparatively brief time will be lost to the state as a source of revenue. This clearly distinguishes these lands from other lands in general and from other ore lands in particular. The distinction is based on grounds which have a legitimate relation to the question of taxation. Facing the depletion of certain lands and the loss of their value, the state might be justified in imposing a heavier tax thereon during the intervening time, knowing that, when that time should elapse, there could be no further substantial tax at all. There is no apparent difficulty in making the classification or in according uniformity of treatment in connection therewith.

9. Next is the identification of the separate interests here involved for purposes of taxation, or the classification thereof. As already indicated, as the mining operation and the depletion of the property are usually carried on, there are two classes of persons, or two sets of interests, and no more, concerned therein. They are the operator who does the mining, and the owner whose ore is being mined, and the respective interest of each. The interests of an intervening lessee are identified with those of the owner for the purposes here in mind. Although together the owner and the operator are possessed of the entire interest in the property, their relations thereto are markedly different. So great is that difference that one class or set of interests may be taxed without the other, as was done by the act of 1921, and doubtless different rates of taxation may be imposed, and, as will be seen, different forms of tax may be levied thereon. There is no practical difficulty in recognizing these two classes as separate and distinct for purposes of taxation, and in according uniformity of treatment to all within each class. It is a matter largely of specifying interests, very different in character, which it is sought to reach for purposes of taxation. One is dealt with in the act of 1921. The right to select that interest as the basis for the imposition of a separate tax is recognized in Oliver Iron Mining Co. v. Lord et al., supra. Although the tax under the act of 1921 is an occupation tax, the same is levied because of the operator's relation to the land, and, in the last analysis, because of his interest therein. By the act of 1923, the entire remaining interest is made the basis for the tax there imposed. In cases where there is but one ownership, the tax is imposed under the act of 1921.

[14, 15] 10. In a case where it is clearly made out that a law is unconstitutional, the court should not hesitate to so declare. If such proof shall not be made, or if the matter is left in doubt, the law should stand. Invoking now and applying some of the basic rules hereinbefore set forth: This court must be slow to hold a state law invalid; under the evidence here, such a holding is not "imperatively necessary"; in enacting the particular

law here involved, the state Legislature had "a very wide range of discretionary power"; the classification adopted by the Legislature "is a reasonable one and such as essential, differences suggest"; such classification does not indicate any "clear and hostile discrimination between particular persons and classes." It cannot be said that the classification adopted was not "suggested by * * * characteristics which make it desirable on grounds of public policy to apply to the members of the class a particular method of taxation, and impracticable to apply thereto the ordinary methods of taxation." It is not clearly shown that chapter 226, supra, is in violation of either the state or the federal Constitution. The act therefore should be held valid. The justice or injustice of the tax, and the question of where it should ultimately fall, and by whom ultimately it should be paid, are not for determination here, and no comment is made thereon.

[16-18] 11. In a sense it may be said that the two taxes herein referred to are together imposed upon the mining operation as a whole, as the same affects any particular description of land. Undoubtedly, the Legislature of 1923 had something like this in mind. This would not require that the two taxes should be of the same kind. The character of the tax depends upon the legislative intent as expressed in the law. Under either act, the tax might have been laid as an occupation tax, or as an income tax, or as a tax on the land, as might at the same time be applicable and valid and best give effect to the legislative will. Under the act of 1921, the convenient and practicable form to employ was that of an occupation tax. Taken literally, the act of 1923 provides for a tax on royalties. Certain nonresidents of the state of Minnesota urge that as to them the situs of the royalty is never within the jurisdiction of that state, and therefore, that the royalty cannot be taxed therein. Shaffer v. Carter, 252 U. S. 37, 55, 40 S. Ct. 221, 64 L. Ed. 445, is opposed to this view, and, as against the objection referred to, if the act were construed as providing for a direct tax on royalties, it would stand. Looking through the act, however, to the real substance thereof, it is essentially a tax upon the interest in the land owned by the person by whom the tax should be paid, and it is so considered in the determination of this case. The amount of the royalty is the basis to be used in the computation of the tax. Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 581, 15 S. Ct. 673, 39 L. Ed. 759.

12. The question of what royalty receipts shall be included in the computation of the tax for the year 1923, is not decided. It is assumed that, in the administration of the law, the act in question will be so construed as not to offend against any constitutional provision.

From the foregoing, if correct, it follows that the relief prayed for should be denied.