[No. 8598. Department One. February 5, 1910.]

Elmira M. Whitaker, *Executrix etc. Relator*, v. C. W.
Clausen, *State Auditor, Respondent.*[1]

Pensions—Parties Entitled—Death of Applicant Pending Application. Rem. & Bal. Code, § 8923, granting pay for services performed by the Indian war veterans is a gift in the nature of a pension, limited by its terms to the veteran in *propria persona*, and in case of his death pending his application, payment cannot be made to his heir or personal representative; since no provision is made therefor (Rudkin, C. J., dissenting).

Application filed in the supreme court January 20, 1910, for a writ of mandamus to the state auditor to secure a warrant for an Indian war veteran's claim. Denied.

*T. M. Vance*, for relator.

*The Attorney General*, for respondent.

Chadwick, J.—The legislature of 1909 passed an act for the relief of Indian War veterans. Laws 1909, p. 862, ch. 238, § 3 (Rem. & Bal. Code, § 8923), is as follows:

"The claim for such services, verified by the claimant, shall be presented to the adjutant general, who shall, without additional cost to the state, examine and pass upon the same, and may require additional corroborative evidence in support thereof; and he shall prepare, certify and file with the state auditor proper vouchers showing the amount payable to the claimant under the provisions of this act. Thereupon the state auditor shall issue his warrant for the amount found due to the claimant: Provided, that nothing in this act shall be construed to authorize the payment of any claim to any heir or beneficiary of the claimant for services during the Indian wars."

These facts are not disputed: On June 7, 1909, L. C. Whitaker made affidavit of his claim under the foregoing statute, and filed it with the adjutant general of the state. He died on June 16. On June 21 the adjutant general ap-

[1] Reported in 106 Pac. 745; 107 Pac. 832.

proved his claim for a part of the amount demanded, and certified his findings to the state auditor, the respondent here. The respondent, having been informed of the death of the claimant, refused to draw a warrant for the amount upon the demand of the relator, who is executrix of the will of L. C. Whitaker. Respondent justifies under the provisos of the section quoted, claiming that by the terms of the act he cannot deliver the warrant to any heir or beneficiary of the deceased; or, in other words, that the grant was personal, and the obligation on the part of the state ceased with the death of the claimant.

It is the contention of the relator that, while an heir or beneficiary could not initiate the claim, the right to the warrant or payment had become vested at the time of Whitaker's death, and that the ministerial act of drawing the warrant may be compelled by his personal representatives. The remedy, if any, is to be determined by reference to the nature and character of the legislative act. Legislation for the relief of those who have engaged in the public defense has never, so far as we have been able to discover, been put upon the ground of contract, but it has been considered as a bounty or voluntary recognition of patriotic service.

"The pension granted by the government is a matter of bounty. 'No pensioner has a vested legal right to his pension. Pensions are the bounties of the government, which Congress has the right to give, withhold, distribute, or recall, at its discretion. *Walton v. Cotton*, 19 How. 355.' *United States v. Teller*, 107 U. S. 64, 68." *Frisbie v. United States*, 157 U. S. 160, 166.

The only source of authority to which we can look with any assurance is the construction of the pension laws of the country. The later laws have made provision for the lodgment of the government's bounty in case of the death of the one entitled thereto. But it was not so in some of the earlier enactments. In *Oo-la-ya-tah's Case*, 7 Opinions of Attorneys General 619, Hon. Caleb Cushing, then Attorney General of the United States, in considering the then present tendency

of legislation in behalf of those who had been engaged in military service, and, in case of their death, in behalf of their widows and orphans, said:

"Now, on review of all these acts, it will be found that, in certain cases, or classes of cases, Congress has made express provision for widows, children, administrators, heirs at law, or other representative persons, and, in such cases, has, in its discretion, defined who such representative person shall be. In other cases or classes of cases, Congress has made mention of the original party alone, abstaining from all reference to representative persons. If the question were, in all its parts, one of new impression, it would seem to me that, as a general rule in the construction of the pension acts, where they omit to mention representative persons, it was not intended to provide for them. I do not mean to say that a pension, or arrears of pension, already certified, or even adjudicated, should be withheld from representative persons. That is a special question. What my proposition affirms is, that if the law in terms provide only for the pensioner himself by description of a class of persons, and he die without having applied for and obtained an adjudication in his favor, then, by proper construction of the statutes, the right of pension dies with him. It is not properly belonging to the deceased, and as such descendible to or distributable among representative persons, unless made so by express enactment."

In the case of *Arrearages of Pensions*, 7 Opinions of Attorneys General, page 717, the same officer said:

"I concluded, in the first place, that invalid pensions, which belong to the subsisting military system of the Government, are only claimable by the party, or such persons representing him, widow or children, as may have been expressly and specifically provided for by the statute."

See, also, *Unclaimed Revolutionary Pensions*, 8 Opinions of Attorneys General, 198.

It is the contention of the relator that her testator bore the same relation to the state as one who has fully complied with the land laws bears to the United States government. There is no analogy between the cases. Theoretically, at least,

the Federal government has given its land in consideration of certain acts to be performed or money paid, and it has been held that, upon full compliance, the settler can compel the issuance of a patent, upon the theory that he has a vested right in the land. But vested rights never grow out of gratuitous favor. Only those who can ground their claims in some contract, express or implied, or upon some right guaranteed by the common law, are heard to assert such rights. Neither element exists in this case. But even the application of the land laws does not aid the relator, when applied to a state of facts similar to those we have to consider. *Campbell v. Wade*, 132 U. S. 34.

Whatever may have been the obligation of the United States government to pay its Indian War debt (the record shows it to have been met, in part, at least,) there was no obligation on the part of the state of Washington to pay any part of it. The act of 1909 is a gift, limited by its terms to the veteran in *propria persona*. In the case at bar Whitaker had done nothing to secure his right, other than to file his claim. It was not even allowed in his lifetime, and as against the manifest intent of the law to make the gift personal, the courts are powerless to extend the state's bounty to the heirs or beneficiaries of a deceased person.

The writ is denied.

FULLERTON, MORRIS, and GOSE, JJ., concur.


RUDKIN, C. J. (dissenting)—A literal construction of the proviso to section 3 of the act under consideration (Laws 1909, p. 862, ch. 283, § 3; Rem. & Bal. Code, § 8923), would not permit of the payment of a warrant to the heir or other beneficiary of a deceased claimant, although the claim was presented, audited, and allowed during his lifetime. I do not think that such literal construction was intended. The purpose of the proviso was doubtless to prevent the heirs of deceased veterans from preferring claims against the state where the veteran himself presented no claim during his life-

time.  In enacting the proviso the legislature did not have claims such as this in contemplation; and if it had, I do not think that it would have provided for their rejection.  The question is one of little moment, as it will probably never arise again, but the act was passed in recognition of a moral obligation resting on the state as successor to the territory, and I think a fair and reasonable construction of its provisions would include and authorize the payment of the claim in suit.  I therefore dissent.