[No. 13384. Department One. September 26, 1916.]

*In the Matter of the* PETITION OF MRS. ROSE SNYDER FOR

SUPPORT OF MOTHERS.[1]

CONSTITUTIONAL LAW—CLASS LEGISLATION—MOTHER'S PENSIONS—
STATUTES—REPEAL. An abandoned wife, pensioned under the act of
1913 (3 Rem. & Bal. Code, § 8385-1 *et seq.*) cannot object that the act
of 1915 (Rem. 1915 Code, § 8385-1 *et seq.*) repealing the former law
is unconstitutional as class legislation in that the latter made no
provision for abandoned wives; since the earlier act did not provide
pensions for all classes of indigent mothers, and is as objectionable
in that respect as the act of 1915.

SAME. The act providing pensions for indigent mothers (Rem.
1915 Code, § 8385-1 *et seq.*) is not unconstitutional as class legisla-
tion or as denying the equal protection of the laws in that it repeals
the act of 1913 authorizing provision for abandoned wives, for whom
no provision is made; since the matter is one of public policy only
and the pension a voluntary bounty that may be discontinued at
any time.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered September 30, 1915, dismissing
an application for an allowance under the mothers' pension
act, after a hearing before the court. Affirmed.

*G. Wright Arnold,* for petitioner.

*Alfred H. Lundin, Frank P. Helsell, W. F. Meier,* and
*Joseph A. Barto, amici curiae.*

FULLERTON, J.—The act of March 24, 1913 (Laws 1913,
p. 644; 3 Rem. & Bal. Code, § 8385-1 *et seq.*), commonly
known as the Mothers' Pension act, provided for an allowance
out of the county treasury to certain destitute mothers whose
husbands were dead, or were inmates of penal institutions, or
who had been abandoned by their husbands and such aban-
donment had continued for a period of more than one year.
In 1915 (Laws 1915, p. 364; Rem. 1915 Code, § 8385-1 *et
seq.*), the act was repealed and a new act passed which pro-

[1]Reported in 160 Pac. 12.

vided for allowances only in cases where the husband is dead or confined in a penal institution or insane hospital, or whose husband, through total disability, is unable to support his family; making no provision for a case of abandonment.

While the act of 1913 was in force, the petitioner, Rose Snyder, made application to the proper authorities of King county for an allowance, basing her claim upon the fact that she had been abandoned by her husband, which abandonment had continued for more than one year. Her claim was allowed, and she was paid a fixed allowance until the repeal of the statute by the going into effect of the act of 1915. After that time she applied by petition to the juvenile court for a renewal of the allowance, again basing her claim upon the ground that she had been abandoned by her husband. The petition was disallowed and a judgment rendered dismissing the application. This appeal is prosecuted therefrom.

The appellant attacks the law of 1915 on the ground of constitutionality. She argues that it contravenes § 12 of art. 1 of the state constitution, which provides that no law shall be passed granting to any citizen or class of citizens, or corporations other than municipal, privileges and immunities which upon the same terms shall not equally belong to all citizens or corporations; and, also, that part of the fourteenth amendment to the constitution of the United States which provides that no state shall make or enforce laws which shall abridge the privileges or immunities of the citizens of the United States or deny to any person within its jurisdiction the equal protection of the laws. The specific objection is that the law makes an arbitrary selection of its beneficiaries, since it includes indigent mothers whose husbands are dead, or incarcerated in penal or insane institutions, or whose husbands are unable because of total disability to support their families, but excludes mothers whose husbands have abandoned them.

In support of the objections, her attorney presents an able brief on the principles to be applied by the courts in deter-

mining whether or not an act of the legislature falls under the constitutional ban of class legislation. But while we agree with his presentation in the abstract, we cannot think the principles contended for have application here. In the first place, the act of 1913 did not provide pensions for all classes of indigent mothers, and is, in consequence, as susceptible to the constitutional objection of class legislation as is the act of 1915. Any rule of law, therefore, which would destroy the act of 1915 on this ground would destroy all previous legislation on the subject, thus leaving the applicant utterly without remedy in any event.

In the second place, the state may care for its indigent and poor in any manner it pleases. What scheme will be adopted is wholly within the discretion of the legislature. That body may provide, without violating any provision of the constitution, that certain classes shall be cared for by regular allowances from the county treasury, while others may receive intermittent allowances, or be cared for at alms houses or poor farms maintained for the purpose. No individual or class of individuals can acquire a vested right to be cared for in any particular manner. Indeed, the state is under no legal obligation to care for its poor at all. While it undoubtedly has a moral obligation to do so, there is no such obligation as can be enforced in law. Such relief as it does provide is legally in the nature of a largess or bounty, which may be discontinued at the legislative will.

In the case before us, the legislature probably discontinued pensions to indigent mothers whose husbands had abandoned them because it concluded that to grant such pensions was not in accord with sound public policy. But whatever may have been its motive, there is no question as to its right and power to discontinue such pensions, and no former beneficiary can legally complain.

The judgment is affirmed.

MORRIS, C. J., MOUNT, and ELLIS, JJ., concur.

Chadwick, J. (concurring)—The suggestion that the act of the legislature amending the Mothers' Pension bill violates art. 1, § 12 of the state constitution, and the fourteenth amendment to the constitution of the United States, will not bear discussion.  Those sections of our constitutions apply only to rights sounding in contract, or which become vested rights under some rule of the common law or a statute which partakes of the nature of a contract.

"Vested rights never grow out of gratuitous favor.  Only those who can ground their claims in some contract, express or implied, or upon some right guaranteed by the common law, are heard to assert such rights.  Neither element exists in this case."  *Whitaker v. Clausen,* 57 Wash. 268, 106 Pac. 745, 107 Pac. 832.

"No pensioner has a vested right to his pension.  Pensions are the bounties of the government, which Congress has the right to give, withhold, distribute, or recall, at its discretion."  *United States v. Teller,* 107 U. S. 64-68.

"The right of recovery being dependent upon the statute, it is within the power of the legislature to limit the amount of the recovery to any sum it sees fit."  *Longfellow v. Seattle,* 76 Wash. 509, 136 Pac. 855.

And we may add—to any person it sees fit, for, as said in *Frisbie v. United States,* 157 U. S. 160-166:

"Congress being at liberty to give or withhold a pension, may prescribe who shall receive it, and determine all the circumstances and conditions under which any application therefor shall be prosecuted.  No man has a legal right to a pension,  .  .  .   The whole control of that matter is within the domain of Congressional power.  *United States v. Hall,* 98 U. S. 343."

The supreme court of Illinois refused to give a similar statute the character of a remedial statute, in the absence of clear and apt language, notwithstanding the contention that in construing an act that may have been intended to be retrospective in its application, the courts will resolve the doubt in favor of the individual, resorting to contemporaneous construction if necessary, saying:

"Appellees argue this case as though it were a matter of contract or vested right, while, in fact, it is a mere matter of largess or bounty. A pension is a bounty springing from the graciousness and appreciation of sovereignty. It may be given or withheld at the pleasure of a sovereign power. Because one is placed upon a pension roll under a valid law is no reason why that law may not be repealed and the pension cease." *Eddy v. Morgan*, 216 Ill. 437, 449, 75 N. E. 174.