CASS COUNTY, NORTH DAKOTA, a Municipal Corporation, and the County Commissioners of Cass County, North Dakota, v. BESSIE R. NIXON.

(L.R.A.1917C, 897, 161 N. W. 204.)

**Constitutional law — county court — jurisdiction — exclusive — probate and testamentary matters — administrators — guardians — executors — accounts of — sale of estate lands.**

1. Section 111 of the Constitution of the state of North Dakota, so far as it is germane to the issues in this case is as follows: to wit: "The county court shall have exclusive jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators, and guardians, the sale of land by executors, administrators, and guardians, and such other probate jurisdiction as may be conferred by law."

**Mother's Pension Act — constitutional — minors of tender years — guardian — natural.**

2. Chapter 185 of the Session Laws of 1915, commonly called Mother's Pension Act, is not in conflict with § 111 of the Constitution. The persons to be protected and benefited by chapter 185 are minors of tender years, whose natural guardians are unable to furnish such minors the absolute necessities of life; such minors and their estates are proper subjects of guardianship.

**Constitution — state laws.**

3. Chapter 185 of the Laws of 1915 is not in contravention of § 172 of the Constitution of the state of North Dakota, and therefore is not unconstitutional.

**Persons and estates — matters concerning — subject of legislation — judicial investigation — matters of guardianship.**

4. Whenever any matters concerning the persons or estates of minors become the subject of legislation or judicial investigation and determination, or when such matters are considered or acted upon by other than a legislative or judicial body, they are each nevertheless dealing with matters of guardianship.

**Maternal and parental protection — influence — value of — state recognition — indigent mother — minor children — control and protection — petition — county court — jurisdiction.**

5. The state, by chapter 185, recognized the pure and valuable influence of maternal parental protection in the proper development of such minors, and therefore provides where such indigent mother is a fit and proper person for leaving her indigent minors in her possession and control, she being by the very laws of nature closely attached to them, rather than take such indigent minors and place them under the guardianship of strangers.

**Courts — county — jurisdiction.**

6. The county court of Cass county, sitting as a probate court, had jurisdiction of the subject-matter of the petition.

Opinion filed January 16, 1917.

Appeal from District Court of Cass County, *Pollock,* J.
Affirmed.

*Fowler & Green,* for appellants.

*Pierce, Tenneson & Cupler,* for respondent.

GRACE, J. This case comes before this court by an appeal from an order and judgment of the district court of Cass county, North Dakota, which affirmed an order of the county court of Cass county, which order of the county court made an allowance to the respondent, Bessie R. Nixon, under the provisions of chap. 185, Sess. Laws 1915; and the appeal is also from an order of said county court overruling the demurrer interposed by appellants to the petition of the respondent.

All the facts involved in this case are stipulated or conceded by the respective parties to the action. Among the controlling facts so stipulated or conceded are those admitting the indigency of the mother; the minority of the children of such mother; that such minor children are

under the age of fourteen years; and that the county court, after investigation of all the facts of the case, made its order allowing certain amounts of money for the support and maintenance of each child; said amount to be paid to the mother for such purpose; and that she was a fit and proper person to whom to pay it for the support of such children.

The questions involved and presented upon this appeal are purely questions of law. The dominant question of law here presented is: Is chapter 185 of the Session Laws of 1915 unconstitutional? The decision of this major question will virtually decide all other questions of law presented in this case. Section 111 of the state Constitution, so far as it is applicable to this case, is as follows, to wit: "The county court shall have exclusive original jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators and guardians, the sale of lands by executors, administrators and guardians, and such other probate jurisdiction as may be conferred by law." Chapter 185, Sess. Laws 1915 (commonly called Mother's Pension Act), is not in conflict with § 111 of the state Constitution. The persons, in fact the real and actual recipients of the protection and benefits conferred by chap. 185, Sess. Laws 1915, are indigent minors of tender years, who are placed in such condition that by reason of the poverty of the mother and her inability to supply such minors with those absolute necessities of life, such as proper clothing to protect the bodies of such infants from the wintry winds of this northern region, where climatic conditions at certain seasons become so exceedingly frigid; and the indigent mother not having the financial ability to procure fuel for the home of such infants, or food to appease their pangs of hunger, and from these causes the very existence of such children and moral welfare, their health and physical development becomes greatly endangered. These minors, mere infants, cannot supply themselves. Their indigent mother, reduced to the depths of penury and want, cannot do so, and the lives of these minors of tender years becomes imperiled unless the state takes an interest in this regretable condition, too frequently found in this land where the necessities of life are produced in such abundance.

The laws of the state regarding the persons or estates of minors were

enacted by reason of the authority found in § 111 of the state Constitution, and jurisdiction in matters concerning either the person or estates, or both of minors, was given to the county court. The law under consideration is chapter 185, being one which involves the care and protection of estates of minors of very tender years, and the care of the estate of such minors being one of the cardinal duties of county courts, chapter 185 having appointed the county court to perform and execute the duties set forth in chapter 185 toward and concerning the estate of such minors, the rendition of said duty by the county court towards such minors is the exercise of a judicial function, or the exercise of a power largely partaking of the nature of a judicial function, and is not, properly speaking, an administrative function. The exact line of demarcation where judicial functions end and administrative functions begin is not easily discernible, and is fraught with many difficulties, just as perplexing as it is to accurately determine the exact line of demarcation which segregates the animal from the vegetable kingdom, and as we draw near the extremity of one the shadows of the other, figuratively speaking, are falling across our pathway. The duties prescribed by chapter 185 for the county court are judicial, and not administrative in their intent, nature, and effect, and are in the nature of guardianship functions, the persons to be assisted and protected being minors. For authority as to nature of this character of guardianship, see State ex rel. Kol v. North Dakota Children's Home Soc. 10 N. D. 493, 88 N. W. 273; State ex rel. Stearns v. Klasen, 123 Minn. 382, 49 L.R.A.(N.S.) 597, 143 N. W. 984, and laws of North Dakota relating to the persons and estates of minors. Assuming that chapter 185 had provided that where mothers were indigent and thereby unable to care for her minor children under fourteen years of age, said children should be taken away from the mother by the state and a guardian appointed for them and an allowance similar in nature, amount, and terms to that in chapter 185 provided for the use, benefit, and protection of said children, thus creating an estate for such minors, then there could be no doubt of the county court's authority and jurisdiction in such case, nor that its function therein would be other than judicial. The same meaning and intention is in chapter 185, except the mother, the natural guardian when fit, is left in charge of such minor children and infants of such tender years, for many excellent reasons; her natural affection and

mother love are potent and good forces, and are exceedingly valuable to the child in its evolution from childhood to a more mature state, and no artificial contrivance or invention of law can supplant the valuable influence and beneficent effect of motherly affection in such cases; and the state has been all too tardy in enacting a humane law upon this subject that would harmonize with the laws of human nature.

In the construction of a statute, as a general rule, the meaning and intent of the legislature should be sought from the whole law, and not from the title of the act alone. Perhaps, in special cases, we may look to the title alone, as where there is the contention a law is unconstitutional on the ground that the title of the law embraces more than one subject. The laws enacted by the legislature should be upheld where possible, and unless such law is in direct conflict with some express provision of the state or Federal Constitutions, it should be upheld, but where a legislative act does conflict with an express provision of a state Constitution, or an express provision of the Federal Constitution, such legislative act should and must be by the courts held to be unconstitutional and therefore inoperative and void. The authority of the courts to declare legislative acts void is not an express power, granted to courts by the state Constitution, and unless a legislative act contravenes an express provision of our state Constitution it should be upheld, and, conversely, if the legislative act does contravene an express provision of our state Constitution or the express powers of a Federal Constitution, it should be, and must be, held to be unconstitutional and void. An observance of this rule will operate to preserve to each division of government its respective functions; that is, the executive branch will exercise jurisdiction and power only in the proper execution of laws and proper enforcement of laws; the legislative branch, jurisdiction, and power only in the enactment of laws, and the judicial branch, jurisdiction, and power only in the interpretation of laws. The intent of the legislature in enacting into law chapter 185 is founded upon sound, most progressive, and scientific principles of public policy, and the law is a monument of credit to the legislature which enacted it. Two of the most important, weighty, and far-reaching problems with which the state has to deal are the public health and the elimination of crime. It is a sociological truth that if the environment of childhood is extreme poverty and continual want and penury, accompanied by scanty

clothing, unnutritious, unwholesome, and scanty food, we may expect such an environment must of necessity waste the energies of childhood and subject it to the inroads of disease, which may be communicated to part of the public. Meantime this continued want and misery must weaken the moral fiber of childhood, at the very period in life when the child's mind and being are most susceptible to impressions, either good or bad. As was well said by the noted Italian criminologist, Ferri: "Want is the strongest poison for the human body and soul. It is the fountainhead of all inhuman and antisocial feeling. Where want spreads out its wings, the sentiments of love and affection of brotherhood are impossible." Therefore, the public policy of chapter 185 is the protection of the public health and the elimination of an environment which has a tendency to weaken the moral fiber of those of tender years, and thus superinduce crime. In conclusion, we also may say, we are convinced the duties imposed upon the county court by chapter 185 are judicial in their nature, but if to some extent they appear to be and in a small degree partake of the nature, in some slight respects, to that of administrative powers, yet nevertheless, the granting of the exercise of these powers to the county court in the case here presented in no way contravenes the expressed provisions of § 172 of the state Constitution.

Even if the duties prescribed for the county courts in chapter 185 should be conceded in some respects to consist and be of the nature of administrative duties, can it be said that the legislature, standing as the direct representative of the people—of the whole public—have not the authority to delegate those powers to the county court when it is to the direct interest of public policy and the welfare, life, and perpetuity of the state itself to do so, and where, as in this case, the power delegated in no way directly contravenes § 172 of the Constitution, either expressly or indirectly. The legislature unquestionably has the authority to distribute such minor power where, in its judgment, it may accomplish the greatest good in the interest of the state itself. Upon this proposition, see Martin v. Tyler, 4 N. D. 278, 25 L.R.A. 838, 60 N. W. 392. See also State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.—, —, 156 N. W. 561; Kermott v. Bagley, 19 N. D. 345, 124 N. W. 397. For instance, boards of health act within the county, create debts and bills while in the performance of their duty and when trying to maintain

the public health. And such bills and debts so created by the board of health are audited by the board of health and certified to the county commissioners, and they must pay them as other county expense, and many examples might be given if it were deemed necessary.

We think, for the foregoing reasons, on the whole the law is constitutional and grounded, in the deepest interests of the public good and welfare, and is in the interests of the protection and perpetuity of the state itself. For the reasons stated, the order and judgment of the District Court of Cass County, North Dakota, affirming the order of the County Court of Cass County, making an allowance to respondent, Bessie R. Nixon, is affirmed; and the order of the District Court of Cass County, North Dakota, affirming the order of said County Court overruling the demurrer interposed by appellants to the petition of respondent, is also affirmed.

BRUCE, Ch. J. I concur in the opinion of Mr. Justice Grace. I merely desire to add that in my opinion the word "probate," as used in the clause, "such other probate jurisdiction as may be conferred by law," does not merely apply to the proof of wills, but is much more comprehensive in its terms, and is intended to include such powers as are usually exercised by probate and county courts. See Bouvier's Law Dict. 2728, Johnson v. Harrison, 47 Minn. 575, 28 Am. St. Rep. 382, 50 N. W. 923, and the various editions of the statutes of North Dakota in which the term "Probate Code" has been used and as so used has included much more than the mere proof of wills.

CHRISTIANSON, J. (concurring specially). I concur in the result announced in the foregoing opinion. It is conceded by counsel for appellant that public moneys may be lawfully expended for pensions for indigent mothers. The sole complaint is that the legislature chose the wrong tribunal or board to administer the law.

I do not believe that the duties to be performed under the Mother's Pension Act are necessarily embraced within that class of governmental functions designated in the Constitution as the "fiscal affairs" of the county, and required to be performed by the board of county commissioners. But I am not wholly satisfied that the duties imposed upon the county court fall within the "probate jurisdiction" conferred upon

county courts by § 111 of the state Constitution. It seems to me that the duties imposed are neither wholly administrative nor wholly judicial, but rather that they are of such nature as to permit the legislature to choose such instrumentality as it deems best to carry out its will. See Bair v. Struck, 29 Mont. 45, 63 L.R.A. 481, 74 Pac. 71, and authorities cited therein.

The law is presumed to be constitutional. This presumption becomes conclusive unless it is shown that the enactment is prohibited by the Constitution of the state or of the United States. And the party asserting the statute to be unconstitutional must point to the particular constitutional provision violated. State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.—, —, 156 N. W. 564. Appellant in this case has failed to point to any constitutional provision violated by the law.