PIERCE COUNTY, NORTH DAKOTA, a Municipal Corporation, Appellant, v. CITY OF RUGBY, PIERCE COUNTY, NORTH DAKOTA, a Municipal Corporation, Respondent.

. (181 N. W. 954.)

**Infants — city held not liable for mothers' pension allowances payable by county.**

Section 2508, Comp. Laws 1913, has no application to the payment by a county of allowances for mothers' pensions (Laws 1915, chap. 185), and a city is not liable for 25 per cent of such allowances paid by the county.

Opinion filed March 4, 1921.

Action in District Court, Pierce county, *Burr*, J., to recover proportionate amounts paid for mothers' pensions by the county.

Affirmed.

*Harold B. Nelson,* for appellant.

To sustain the charge of double taxation it must be shown that the second tax was imposed upon the same property, by the same state or government, during the same taxing period. 37 Cyc. 753, and cases cited.

Taxation of lands constituting a portion of the capital stock of banks and the taxation of the stock itself is not double taxation, likewise, the taxation of railway right of way, as such, and the taxation of elevator sites upon the right of way was not double taxation. Re First Nat. Bank, 25 N. D. 625; Northern P. R. Co. v. Morton County, 32 N. D. 627; State ex rel. Atty. Gen. v. Douglas County, 26 N. W. 378.

*L. R. Nostdal,* for respondent.

The constitutional inhibition against special legislation does not prevent classification, but such classification must be natural, not arbitrary; it must stand upon some reason, having regard to the character of the legislation of which it is a feature.

It is not the form, but the effect of a statute which determines its special character. Edmonds v. Herbrandson, 2 N. D. 270, 50 N. W. 970.

"The object and meaning of these constitutional provisions (Const.

§§ 11 and 20) has been passed upon so often, and is so well understood that a discussion of the subject is unnecessary." Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W, 33; 15 N. D. 327, 108 N. W. 36.

ROBINSON, Ch. J.    The plaintiff brings this action against the city of Rugby to recover $148.25, being 25 per cent of the sum paid by the county of Pierce on pensions to mothers residing in the city of Rugby. In counties having a township organization it seems that each township is charged with the necessary relief of its poor.  Each township supervisor is an overseer of the poor and the board of county commissioners has the power to reduce or increase any allowance for aid made by an overseer of the poor, and in such cases it is provided the township in which the poor person has a legal residence shall pay 25 per cent of the sum allowed, and the county shall pay the balance.  Comp. Laws, § 2508.   The statute does in no manner refer to allowances made under the Mothers' Pension Act.   By that act it is provided: "In every county of the state every woman who has one or more children under fourteen years of age, dependent upon her for support, shall receive an allowance of not more than $15 a month for each child, such sum to be paid out of the county treasury."  Laws 1915, chap. 185.   The allowance is made by the county court upon conditions prescribed by the statute.  The Mothers' Pension Act is complete in itself.  The sum which is allowed becomes a county charge and is levied the same as other county charges against all the taxable property of the county, and in every city and township of the county.  Certain it is the statute imposes no liability upon any city or township for the payment of mothers' pensions.  There is no claim that the city of Rugby has in any way contracted to pay the 25 per cent in question or that it has incurred any liability by reason of going into the business of growing children and caring for their mothers.  That might not be considered a business enterprise.

In truth, there is nothing in the complaint nor in the evidence which begins to state in any way a cause of action against the city of Rugby.

Judgment affirmed.

BIRDZELL, J., concurs.

BRONSON, J. (concurring specially). I concur in the affirmance of the judgment. The contention of the plaintiff that § 2508, Comp. Laws 1913, imposes a proportionate liability upon the city must be denied. The Mothers' Pension Act (Laws 1915, chap. 185), is not to be treated as an auxiliary or supplementary poor relief act. The act is termed a pension. It is so for the humanitarian purposes therein involved. The act specifically provides for payment of the allowance out of the county treasury. There is no prescription in the act imposing liability on the city directly for the allowances so paid. The provision in § 7 of the act which prescribes "Nothing in this act shall be so construed as to change the proportionate payment by county, city, incorporated village or township," does not create a direct liability for the city payment of the pension allowed. Its only effect, apparently, is with reference to cases where poor relief may be allowed pursuant to statute in the nature of temporary aid. It is not necessary to consider the constitutional questions propounded by the parties.

CHRISTIANSON, J., concurs.

GRACE, J. (specially concurring). I concur in the affirmance of the judgment.

The Mothers' Pension Act, chapter 185, Session Laws of 1915, is, as the title plainly states, a "mothers' pension." It is in no sense a poor relief act.

In the case of Cass County v. Nixon, 35 N. D. 601, L.R.A.1917C, 897, 161 N. W. 204, in an opinion by the writer, the constitutionality of the Mothers' Pension Act was at issue, and determined by that decision, in which all of the members of the court, as then constituted, concurred. It was there claimed that the act was contrary to § 111 of our Constitution.

In that decision, also, the purpose and intent of the act were discussed, and the following language used:

"It is a sociological truth that if the environment of childhood is extreme poverty and continual want and penury, accompanied by scanty clothing, unnutritious, unwholesome, and scanty food, we may expect such an environment must of necessity waste the energies of childhood and subject it to the inroads of disease, which may be com-

municated to part of the public. Meantime this continued want and misery must weaken the moral fiber of childhood, at the very period of life when the child's mind and being are most susceptible to impressions, either good or bad. . . . Therefore the public policy of chapter 185 is the protection of the public health and the elimination of an environment which has a tendency to weaken the moral fiber of those of tender years, and thus superinduce crime."