# IN THE MATTER OF THE APPLICATION OF UNA WALKER FOR MOTHERS' PENSION.

(193 N. W. 250.)

**Infants — mother's pension held compensation for rearing future citizens in proper surroundings.**

1. Chapter 185, Session Laws of 1915, commonly known as the Mothers' Pension Act, is not a poor relief statute, but the pension therein provided as rather in the nature of a compensation by the state for services rendered in rearing future citizens in proper surroundings.

**Infants — mother held not to lose right to pension for temporary removal from county of qualification.**

2. Where a mother has been granted a pension under chapter 185, Session Laws 1915, and removes from the county wherein she qualified for the pension and resides for over one year in another county in the state, it is held that she does not, merely because of such removal, under the facts stipulated in this case, lose the right to such pension. The legal effect of permanent removal, with intention to acquire permanent residence in another county, on the right to a continuance of a pension, is not decided.

Opinion filed April 7, 1923.

Infants, 31 C. J. § 14 p. 993 n. 49 New; p. 994 n. 51.

Appeal from Order of the District Court of Renville County, North Dakota, *Burr, J.*

Affirmed.

*J. E. Bryans,* for appellant.

*Flynn, Traynor & Traynor,* for respondent.

JOHNSON, J. This is an appeal from an order of the district court of Renville county, made December 7, 1922, vacating an order of the

county court of Renville county, which last-named order attempted to discontinue the payment of a pension to Mrs. Walker under the provisions of chapter 185, Session Laws of 1915. The facts are stipulated by the parties and, so far as material, are as follows: Mrs. Walker petitioned the county court of Renville county for a Mothers' Pension under the provisions of chapter 185, Sess. Laws 1915. The petition was granted, and a pension awarded. At the time she made her application, she had been a resident of Renville county for more than one year, as required by the act, and she brought herself clearly within its terms and purpose. On or about April 10, 1920, Mrs. Walker moved from Renville county to Ramsey county, North Dakota, where she has since been working as a housekeeper. Her children have at all times remained with her since she moved to Ramsey county. On or about the 14th day of April, 1921, the county court of Renville county, without notice to Mrs. Walker, made an order discontinuing the payment of pension, effective on and after May 1, 1921, for the reason that she had removed from Renville county, and had been absent therefrom for more than one year. On the 12th of September, 1922, Mrs. Walker made a motion, in the county court of Renville county, that the order aforesaid be rescinded and vacated. This motion was denied. In due time, the petitioner appealed to the district court of the second judicial district and the judge of the district court made an order reversing the order of the county court and directed the payment of the pension to Mrs. Walker, pursuant to the original order of the county court allowing her a pension. It is from this last-mentioned order of the district court that this appeal is taken.

The only question on this appeal is whether a mother, to whom a pension has been granted, under chapter 185, Sess. Laws 1915, loses the right thereto upon removing from the county where the pension was granted, and continuing to reside in another county, but within the state, for a period of one year or more. There is nothing in the stipulation of facts to indicate that her removal from Renville county is with the intention of permanently establishing a residence outside thereof. The legal effect of such permanent change of residence upon the right to a continuance of a mother's pension is not an issue on this appeal and is not here decided.

The decision turns upon the construction to the given chapter 185,

Session Laws of 1915, commonly known as the Mothers' Pension Law. This law provides, in substance, that in every county in the state, any woman who has a child or children under fourteen years of age dependent upon her may receive an allowance from the county of not to exceed $15 a month for each such dependent child, to be paid out of the county treasury. The conditions upon which the allowance is made are set out in § 2 substantially as follows: The allowance is made for the benefit of the children who must be living with the mother and may be made only if, without such allowance, the mother is unable to maintain "a suitable home for her children;" the mother must be a proper person morally, physically, and mentally to bring up children, and the court may allow the pension only when necessary to "save the child or children from neglect." If the county court finds that the funds are not being judiciously expended, the allowance may be made in provisions or supplies, to be administered by the overseer of the poor, or by some proper person appointed by the county judge. Subdivision 5 of § 2 provides as follows:

"No person shall receive benefit under this act who shall not have been a resident of the county in which the application is made for at least one year previous to the making of such application."

Section 7 provides expressly that this act "is intended to supplement existing laws for aid of the poor, and is for the specific purpose of furnishing permanent aid to mothers who come under its provisions." The purpose of the law appears, in § 5, to be to insure, as far as possible, that "dependent children may grow into useful citizens."

This act is evidently of a remedial nature and should be liberally construed. It was undoubtedly the legislative purpose to provide a remedy that would mitigate or remove the evils presumed to result when children are reared in poverty, neglect, or immoral surroundings and away from the presumptively beneficent influence of home and parental care. It is a statute passed in the interest of a better citizenship and the purpose of the act should not be frustrated by narrow construction. Primarily, the beneficiaries of the law are children. It is not in any sense a poor relief act to aid a certain class of indigent adult persons. Mothers are not, by this act, put into the class of paupers just because the legislature deems it wise to assist them in maintaining a home in which to bring up children and to enable them to supervise

the training and education of their offspring. The pension awarded under the law is rather in the nature of a compensation for services rendered the state in bringing up its future citizens in proper surroundings and giving them the proper care. Startup v. Harmon, 59 Utah, 329, 203 Pac. 637; Re Koopman, 146 Minn. 36, 177 N. W. 777; Cass County v. Nixon, 35 N. D. 601, L.R.A.1917C, 897, 161 N. W. 204; Pierce County v. Rugby, 47 N. D. 301, 181 N. W. 954.

It is contended by the appellant, Renville county, that the statutes governing relief for the poor control in this case as to the requirement of residence and that the pensioner, upon removing from the county, loses her right to a pension after one year. It is contended that the Renville county court can exercise no control over the method of expenditure of funds by the pensioner residing in Ramsey county and could make no order binding upon any overseer of the poor in Ramsey county, with reference to the administration of the law, should provisions be ordered instead of money. Counsel overlook the fact that the law makes it the duty of the overseer of the poor in the township, village, or city in which the applicant lives, or of some proper person appointed by the county judge to supervise the administration of the relief, if the overseer of the poor be not so designated, when the pensioner lives out of the county of payment. The court has the power to designate some proper person and would, therefore, have jurisdiction over such person, whether a resident of the county, where the pension is granted, or not.

We do not believe that it was the intention of the legislature to impose any burdensome restrictions upon the mother in her endeavors to bring up and educate her children properly. If the mother could better her economic condition by moving from one county to another within the state, and bring her children, the beneficiaries under this law, into more desirable surroundings and give them improved educational advantages thereby, there is nothing in the language, reason or purpose of the act that would justify a holding that such removal should deprive her of a right to the pension or the children of its benefits. The pension may not be allowed or paid after the child has attained the age of fourteen years; one of the conditions of receiving a pension is that the petitioner must have resided in the county for at least one year before the petition is filed. It is clear to us, in view of the expressed purpose of the law, that the legislature did not intend that there should be any

interruption in the compensation to the mother for the benefit of her children due to the single fact that economic necessity or considerations of prudence impelled her to move from one county to another within the state. The interest of the state in the welfare of its future citizens under this law is not measured by the boundaries of political subdivisions. Through agents duly appointed, the law makes ample provision for control, by the officers of the county which pays the pension over the manner in which relief may be administered under the law. The applicant must satisfy the county court that she is not a mere transient, but is in fact a resident of the county which she asks to help her rear her children. Having once convinced the proper authorities that she is a person entitled to a pension under the law, that right follows her regardless of her choice of temporary residence within the state, unless forfeited by breach of express or implied conditions, or lost because the necessity for aid has ceased to exist. The law nowhere, neither expressly, nor by necessary implication, restricts her liberty of movement or choice of residence; the only object the state is seeking to advance,—the welfare of the children,—is best served by giving the mother the utmost freedom of opportunity to reside at that place in the state where the conditions, on the whole, are most advantageous for herself and the objects of the state's bounty. To hold otherwise would be to read into the law a restriction not warranted by its language and, to some extent, to defeat the beneficent purpose the legislature intended to accomplish. It is not difficult to arrive at this conclusion if we bear in mind that solicitude for the welfare of dependent children prompted the enactment of this law and that that welfare would not be promoted by limiting the mother's right to take advantage of opportunities within the state, or to select within the state the environment in which to bring up her children.

A mother of dependent children, whose husband has just died, may find it utterly impossible to continue in the business or to remain in the place her husband selected. Suddenly thrown upon her own resources, she must fight the battles of life with the means at her command. She must look for work and a place to live and rear her children. Section 5 of the act prescribes the condition on which the allowance of the pension, when once made, may be suspended or discontinued, before the child attains the age of fourteen years, and that is when the

allowance made is failing of the purpose intended by the law, that "dependent children may grow into useful citizens." Temporary removal from one county to another does not in any manner tend to defeat this purpose and is not enumerated as a condition justifying a discontinuance of the allowance. It would be a perversion of justice to read into the law any such condition or limitation.

The order of the trial court is affirmed.

CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., concur.

BRONSON, Ch. J. (concurring). I concur in the result and in the principles of law announced in the syllabus.