## Mothers' Assistance Act.

*Constitutional law—Mothers' assistance—Appropriations of public money —Children as public assets—Compensation to mothers for public service—Act of May 28, 1923.*

1. The Mothers' Assistance Act of May 28, 1923, P. L. 459, does not violate section 18, article iii, of the Constitution, forbidding certain appropriations of public moneys, and is constitutional.

2. The Mothers' Assistance Act is clearly separate and distinguished from the Old Age Assistance Act, declared unconstitutional in Busser v. Snyder, 282 Pa. 440.

3. The act is justified as providing for payment to those who have performed a valuable service to the Commonwealth by bearing children, and as providing for the maintenance of such children.

Department of Justice. Opinion to Hon. Samuel S. Lewis, Auditor General.

WOODRUFF, Att'y-Gen., March 12, 1925.—I have your request for a formal opinion on the question as to whether you may legally, and without personal liability under your bond or otherwise, continue to settle requisitions for the payment of money appropriated under the Act of May 28, 1923, P. L. 459, or any other acts, to carry into effect the provisions of the Mothers' Assistance Act of July 10, 1919, P. L. 893, as amended?

The occasion for your inquiry is the decision of the Supreme Court in the case of Busser et al. v. State Treasurer et al., 282 Pa. 440, holding the Old Age Assistance Act unconstitutional.

First of all, we must keep in mind the rule laid down by the Supreme Court in said decision:

"In determining whether an act of assembly is unconstitutional, certain rules have been laid down for our guidance. It should not be so held unless it is clearly, strongly and imperatively prohibited. 'If the act is within the scope of legislative power, it must stand, and we are bound to make it stand if it will upon any intendment. . . . Nothing but a clear violation of the Constitution—a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void;' P. R. R. Co. v. Riblet, 66 Pa. 164, 169. Every presumption should be indulged in its favor, and one who claims an act is unconstitutional must prove his case beyond doubt: Collins v. Lewis, 276 Pa. 435, 438; Sinking Fund Cases, 99 U. S. 700, 718; Mugler v. Kansas, 123 U. S. 623.

"Words must be understood in their general and popular sense, as the people who voted on the Constitution understood them, and we should not go beyond this meaning unless the language is so ambiguous that we need to ascertain the mischief to be remedied: Keller v. Scranton, 200 Pa. 130, 134; Collins v. Kephart, 271 Pa. 428, 434; Long v. Cheltenham Township School

District, 269 Pa. 472, 475; Sharpless v. Philadelphia, 21 Pa. 147, 162. What the State Constitution forbids is not authorized; what is not forbidden is authorized."

If the Supreme Court imposes upon itself the strict rule that it must not hold a law unconstitutional "unless it is clearly, strongly and imperatively prohibited," how much more strongly does this rule apply to the Department of Justice and to all the executive departments, commissions, boards and officers of the government? The Mothers' Assistance Act, being a law clearly separate and well distinguished from the Old Age Assistance Act, must be held to be constitutional, and the appropriation to effectuate it must be held valid, unless either overwhelming reasons in the law itself for regarding it unconstitutional can be found or a further decision of the court should rule. to the contrary.

Nobody has as yet attacked the constitutionality of the Mothers' Assistance Act, and there has been no suggestion that there is any defect in the title or construction of that law. Therefore, for the purpose of this opinion, we are confining our attention to the question on which the Old Age Assistance Law was declared unconstitutional; namely, whether the Mothers' Assistance Act and the appropriations to carry it into effect run counter to the constitutional provision of section 18 of article III of the Constitution, which reads: *"Certain Appropriations Forbidden.* No appropriation, except for pensions or gratuities for military services, shall be made for charitable, educational or benevolent purposes, to any person or community, nor to any denominational or sectarian institution, corporation or association."

Is the appropriation, whereby money of the Commonwealth, through boards of trustees and other agencies of the government, is used to assist "poor and dependent mothers of proved character and ability," "in supporting their children in their own homes" when such children are "under the age of 16 years" and the husbands of said mothers "are dead or permanently confined to institutions for the insane" (section 6 of the Act of July 10, 1919, P. L. 893), unconstitutional and, therefore, ineffective?

This question has come up and the Mothers' Assistance Acts have been sustained as constitutional in the following cases in other states: Denver & Rio Grande R. R. Co. v. Grand County, 170 Pac. Repr. (Utah) 74 (1917); Re Mrs. Snyder, 93 Wash. 59 (1916); Stearns County v. Klasen, 123 Minn. 382 (1913); Cass Co. v. Nixon, 35 N. D. 601 (1917); Re Rumsey, 167 N. W. Repr. (Neb.) 66 (1918). The only case which we found where the Mothers' Pension Act has been declared unconstitutional was the case of State Board et al. v. Buckstegge, 158 Pac. Repr. Ariz.) 837. The decision here rested on the ground that the title was not sufficiently comprehensive to embrace the provisions of the act. This act was also in the nature of an Old Age Pension Act. But in this respect it was so vague and indefinite as to put it in an entirely different class from the Old Age Pension Acts which are at present operating in several states of this country. In fact, its pronounced incompleteness and indefiniteness was one of the grounds upon which it was declared to be unconstitutional. However, nothing is to be found in the opinions in this case which would indicate that Old Age Pension Acts were, *per se,* unconstitutional. Indeed, the opinions, particularly that of the concurring justice, seem to indicate that if the act had contained sufficient administrative details and more definiteness in its fundamental provisions, it would have been declared valid.

Certainly, with such a large number of Supreme Court decisions, even in other states, it is impossible for the Department of Justice to say that appro-

priations for Mothers' Assistance are "clearly, strongly and imperatively prohibited."

I draw attention to another difference between Old Age Assistance and Mothers' Assistance, which brings the latter very far, if not entirely, outside of the discussion of the Supreme Court in the Old Age Assistance case, concerning which the Supreme Court says: "With relation to the retirement acts to which appellant calls attention, the basis on which these acts are founded is neither charitable nor benevolent; they are founded on faithful, valuable services actually rendered to the Commonwealth over a long period of years, under a system of classification which the legislature has considered reasonable. These appropriations are for delayed compensation for these years of continued service actually given in the performance of public duties in their respective capacities, with the quality of right and obligation in its concept. It is compensation for the hazard of long-continued public employment. Furthermore, in the Judicial Retirement Act, those participating in or partaking of its benefits are required to hold themselves in readiness to perform such work as may be assigned to them and to act in the several capacities stated in the statute when designated so to do by the court to which they were formerly attached. It is a well known fact that persons receiving the benefits of this act, all of whom were or are of mature age, have not only held themselves open to perform the duties that may be assigned to them, but, since their retirement, have actually performed services to the Commonwealth of the utmost importance, and have continued to do so until within a very few days of their death, and those who still live are now performing those services; they, in effect, hold a legislatively-created office, for which they are being compensated."

Along the line of the discussion, quoted directly above, we should note that, whereas the Old Age Assistance Act provided help for those who, in order to qualify, need not show that they had ever done anything of value for the Commonwealth, and certainly the assistance could not be regarded as a reward to them for services to be performed; nevertheless, the Mothers' Assistance Act provides for payment to those who have performed the invaluable service of bearing children for the benefit of the population of the State. Moreover, these mothers receive the assistance in order that they may use it in serving the State further by caring for, educating and rearing children who are regarded universally by economists as one of the tangible and valuable assets of the State.

Surely our Commonwealth could not exist except through the production and rearing of healthy children. It is certainly far from a quibble, therefore, to urge that the appropriation of the money for Mothers' Assistance is not for charitable or benevolent purposes, but, as the Supreme Court hints with regard to Mothers' Assistance, and says with regard to the Retirement Acts in general, a compensation for services actually given in a particular and peculiar form of helpfulness to the State, and as was emphasized concerning the Judicial Retirement Act, a payment for those who must daily and hourly "hold themselves in readiness to perform such work as may be assigned to them;" namely, in the case of the mothers who receive assistance, the never-ending care and upbringing of the children, to effectuate which service the appropriation is made.

From the above I find reasons in excess of what might in strictness be required for holding, and so advise you, that legally you have the right to, and should, regard the Mothers' Assistance Acts, including the appropriation of money in connection therewith, valid and constitutional; and that you

should, subject to the usual auditing required of you by your duties as Auditor General, continue to settle the requisition claims filed with you on account of said Mothers' Assistance Act and appropriations; and, also, that, having audited and settled such claims and drawn the warrants upon the State Treasurer for the payment thereof, you will have only performed your legal duty (unless and until restrained by court order) as required by law, and will not be in any way liable for so doing upon your official bond or otherwise.

From C. P. Addams, Harrisburg, Pa.