SAM J. HART, *as Administrator, Respondent,* v. GRAYS HARBOR COUNTY, *Appellant.*[1]

*Paul O. Manley,* for appellant.

*J. E. Stewart,* for respondent.

*The Attorney General* and *Harry L. Parr, Assistant, amici curiae.*

GERAGHTY, J.—George W. A. Hart made application June 11, 1935, to the county commissioners of Grays Harbor county, of which he was a resident, for a blind

[1]Reported in 86 P. (2d) 198.

pension, pursuant to the provisions of Laws of 1935, chapter 106, p. 259. (While not material in the case, we may call attention, parenthetically, to the fact that chapter 106 was repealed by the 1937 legislature, and provision made for relief of the blind directly by the state itself.) On the failure of the commissioners to act favorably upon his application, he applied to the superior court for a writ of mandate directing the county and its commissioners to accept his application and allow him a pension, as provided in the act. A writ was granted by the superior court as prayed for, and the commissioners and county appealed. This court affirmed the judgment of the lower court. *State ex rel. Hart v. Gleason,* 189 Wash. 292, 64 P. (2d) 1023. The applicant died November 7, 1936, while the appeal was pending in this court.

The present action was instituted by the administrator of the decedent's estate to recover from the county the amount of pension, at the minimum rate, which he should have received between the date of his application and the date of his death. In his complaint, the administrator alleged that the decedent left no estate other than his claim for accrued pension; that creditors' claims against his estate, in a sum aggregating nine hundred dollars, had been filed; and that the estate was without funds to pay these claims unless the county be required to pay the amount due the decedent at the time of his death. Judgment was entered in favor of the plaintiff, as prayed for, in the sum of $533.28, being the amount which would have accrued to the decedent had his claim been allowed and paid from the date of his application. The judgment also provided for the payment of interest. The county appeals.

The respondent has filed a motion to dismiss the appeal and affirm the judgment upon the ground

that no statement of facts has been certified by the trial court.

By written stipulation of the parties, the facts were agreed upon. This stipulated statement of facts is included in the transcript as certified by the clerk of the superior court. It is referred to in the judgment, which recites:

"This cause coming on this day on motion of the plaintiff for judgment against the defendant, . . . and it appearing to the court and the court finding that the parties heretofore agreed upon the facts in the case and filed herein an Agreed Statement of Facts . . ."

By this recital, the agreed statement of facts found in the transcript is as effectively before us as if it had been embodied in a formal statement of facts certified by the court. The embodiment of the agreed statement in a separate document would be but an empty and purposeless formality. The motion to dismiss is denied.

The question involved on this appeal is not the right of the decedent Hart, had he lived, to collect the accrued pension awarded to him by the court's decision, but whether the sum passed as an asset to his estate.

While there are many decisions construing provisions of the pension acts, the cases on the immediate issue are not numerous. The one most directly in point is our own case, *Whitaker v. Clausen*, 57 Wash. 268, 106 Pac. 745, 107 Pac. 832. In 1909, the legislature passed an act for the relief of Indian war veterans. Under the statute, claims for relief were to be filed with, and approved by, the adjutant general. Whitaker's claim for relief under the act was approved by the adjutant general, who certified his findings to the state auditor. The auditor, having been

informed of the claimant's death subsequent to the making of his application, refused to draw a warrant for the amount in favor of the executrix of the will of Whitaker. In the course of the opinion, the court said:

"It is the contention of the relator that her testator bore the same relation to the state as one who has fully complied with the land laws bears to the United States government. There is no analogy between the cases. Theoretically, at least, the Federal government has given its land in consideration of certain acts to be performed or money paid, and it has been held that, upon full compliance, the settler can compel the issuance of a patent, upon the theory that he has a vested right in the land. But vested rights never grow out of gratuitous favor. Only those who can ground their claims in some contract, express or implied, or upon some right guaranteed by the common law, are heard to assert such rights. Neither element exists in this case. But even the application of the land laws does not aid the relator, when applied to a state of facts similar to those we have to consider. *Campbell v. Wade,* 132 U. S. 34.

"Whatever may have been the obligation of the United States government to pay its Indian War debt (the record shows it to have been met, in part, at least), there was no obligation on the part of the state of Washington to pay any part of it. The act of 1909 is a gift, limited by its terms to the veteran in *propria persona.* In the case at bar Whitaker had done nothing to secure his right, other than to file his claim. It was not even allowed in his lifetime, and as against the manifest intent of the law to make the gift personal, the courts are powerless to extend the state's bounty to the heirs or beneficiaries of a deceased person."

It cannot be said that the authority of this case is weakened by our holding in *Conant v. State, ante* p. 21, 84 P. (2d) 378. The question involved here was not in that case.

Reading the words of the act, we see there only a purpose to supply relief to blind persons for their own maintenance. In many of the pension statutes provision is made for payment of pension accrued at the pensioner's death to certain designated dependents. It is provided, for instance, in the Federal statutes that accrued pension to the date of the death of the pensioner shall be paid to certain designated beneficiaries, and that

"Such accrued pension shall not be considered a part of the assets of the estate of such deceased person, nor be liable for the payment of the debts of said estate in any case whatsoever, but shall inure to the sole and exclusive benefit of the widow or children. And if no widow or child survive such pensioner, and in the case of his last surviving child who was such minor at his death, and in case of a dependent mother, father, sister, or brother, no payment whatsoever of their accrued pension shall be made or allowed except so much as may be necessary to reimburse the person who bore the expense of their last sickness and burial, if they did not leave sufficient assets to meet such expense." 38 U. S. C. A., § 96.

The only provision made in the 1935 act with reference to pension accrued at the date of the death of the pensioner is found in § 4, p. 261:

"If upon the death of the recipient of a blind pension, it shall appear to the satisfaction of the board of county commissioners that his estate is insufficient to pay his funeral expenses, *the board shall have the power to order the payment of the installment of pension then accruing,* and such additional sum as may be necessary, not to exceed the total sum of one hundred dollars ($100) to such person as the board may direct for the funeral expenses of the deceased pensioner." (Italics ours.)

This provision, it seems to us, strongly negatives any suggestion that the accrued pension passes as an asset to the deceased pensioner's estate. If there had

been any intention on the part of the legislature to apply the amount to any purpose other than payment of funeral expenses by the commissioners, the act would have so stated.

We conclude that the benefits of the act were intended for the personal use of the pensioner, and that no right to accrued pension passed to his estate. The judgment must, therefore, be reversed.

BEALS, HOLCOMB, and MILLARD, JJ., concur.

ROBINSON, J. (concurring in the result)—I concur in the result of the foregoing opinion, but I do not agree that the decision in *Conant v. State,* ante p. 21, 84 P. (2d) 378, has no bearing upon the matter. It seems to me that the rule laid down by the majority in the *Conant* case and purporting to be arrived at by interpretation of Laws of 1937, chapter 156, p. 548 (Rem. Rev. Stat. (Sup.), § 9998-3 [P. C. § 6233-153] *et seq.*), to the effect that an applicant for old-age assistance, if qualified, becomes entitled to it as a matter of right and that the right vests as of the date of his or her application, would require the affirmance of the judgment in the instant case. I am content, however, to see the rule disregarded, because it is so clearly and so obviously unsound.

That very statute (chapter 156) provides, in its third section, p. 549 (Rem. Rev. Stat. (Sup.), § 9998-5 [P. C. § 6233-155]), that a person requiring old-age assistance shall make application therefor to the department of social security, and in § 5, p. 550 (Rem. Rev. Stat. (Sup.), § 9998-7 [P. C. § 6233-157]), that the department shall make an investigation of the circumstances of the applicant, and, in § 6, p. 550:

*"Upon the completion of its investigation, the department of social security shall decide* whether the applicant is eligible for and should receive an old-age

assistance grant under this act, *the amount of the assistance,* the manner of paying or providing it *and the date on which the assistance shall begin."* (Italics mine.) Rem. Rev. Stat. (Sup.), § 9998-8 [P. C. § 6233-158].

How, then, can a right to receive thirty dollars per month, or, for that matter, any other sum, vest in an applicant upon the date of his or her application?

STEINERT, C. J., and SIMPSON, J., concur with ROBINSON, J.

BLAKE, J. (dissenting)—I dissent. Appellant contends, and the majority holds, that a pension is a gratuity and not a right; that it inures to the pensioner personally and not to his estate. In support of this position, appellant cites *Whitaker v. Clausen,* 57 Wash. 268, 106 Pac. 745, 107 Pac. 832, and *In re Snyder's Petition,* 93 Wash. 59, 160 Pac. 12, 3 A. L. R. 1230. While in the latter case it is asserted that a mother's pension is "in the nature of a largess or bounty," I think the decision has no bearing upon the problem presented here. For in that case, it is simply held that a mother who qualified and received a pension under the mother's pension act of 1913 (Laws of 1913, chapter 179, p. 644) had no ground for complaint because of the repeal of that act and the passage of a new act (Laws of 1915, chapter 135, p. 364) setting up conditions under which she could not qualify. There was not involved in that case any right to pension payments which had *accrued* under the 1913 act.

The case of *Whitaker v. Clausen, supra,* is not distinguishable in principle from the case at bar. But I think the case is no longer authority upon the point cited. For in later decisions, the court has departed from the theory that a pension is "in the nature of a largess or bounty." *State ex rel. Hart v. Clausen,* 113 Wash. 570, 194 Pac. 793, 13 A. L. R. 580; *Conant*

*v. State, ante* p. 21, 84 P. (2d) 378. In the latter case, we have just held that one having the qualifications prescribed in Laws of 1937, chapter 156, p. 549, § 3, is entitled as a matter of right to an old age pension in the minimum amount fixed by § 4 of that act, p. 549 (Rem. Rev. Stat. (Sup.), § 9998-6 [P. C. § 6233-156]). And it was further held that the right accrues on the date the application is made.

In the light of this last decision, I think it is clear that respondent's intestate had a vested right in the minimum pension prescribed in Laws of 1935, chapter 106, p. 261, § 4, accruing between the date of his application and the day of his death. 21 R. C. L. 243; *Kavanagh v. Board of Police Pension Fund Commissioners,* 134 Cal. 50, 66 Pac. 36; *Gibbs v. Minneapolis Fire Dept. Relief Ass'n,* 125 Minn. 174, 145 N. W. 1075, Ann. Cas. 1915C, 749.

The decedent's right being vested, the pension was, in so far as it had accrued, an asset of his estate, to which the administrator is entitled, and for which he may maintain this action. *Foot v. Knowles,* 4 Met. (Mass.) 386; *Slade v. Slade,* 11 Cush. (Mass.) 466.

I think the judgment should be affirmed.

MAIN, J., concurs with BLAKE, J.